**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| LEGAL EAGLE, LLC, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 8:26-cv-00371 (TDC) |
| | * | Civil Action No. 8:26-cv-00847 (TDC) |
| NATIONAL ARCHIVES AND | * | Civil Action No. 8:26-cv-00920 (TDC) |
| RECORDS ADMINISTRATION, | * | Civil Action No. 8:26-cv-01214 (TDC) |
| | * | |
| Defendant. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION
<u>TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS</u>**

**<u>INTRODUCTION</u>**

In 2020, the Cato Institute submitted a Freedom of Information Act ("FOIA") request to the Ronald Reagan Presidential Library. Compl., Dkt. #1, ¶ 6 (filed June 17, 2022), *Cato Inst. v. NARA*, No. 22-1746 (D.D.C.). In June 2022, after the National Archives and Records Administration ("NARA") failed to release all responsive records, the requester filed a lawsuit under a theory of constructive exhaustion. *See id. passim*. Since that time, NARA has dutifully processed the responsive records, has provided interim releases, and has not claimed that the plaintiff filed its lawsuit prematurely or that the court lacked jurisdiction over the case because the Presidential Records Act ("PRA") overrode FOIA's constructive exhaustion scheme. *See, e.g.*, J. Stat. Rep., Dkt. #31, at 2 (filed May 5, 2026), *Cato Inst. v. NARA*, No. 22-1746 (D.D.C.).

In 2020, Steve Gillon submitted two FOIA requests to the William J. Clinton Presidential Library. 1st J. Stat. Rep., Dkt. #14, at 3 (filed Dec. 5, 2025), *Gillon v. NARA*, No. 25-2079 (D.D.C.). In June 2025, after NARA failed to release all responsive records, the requester filed a

lawsuit under a theory of constructive exhaustion. Compl., Dkt. #1, *passim* (filed June 30, 2025), *Gillon v. NARA*, No. 25-2079 (D.D.C.). Since that time, NARA has dutifully processed the responsive records, has provided an interim release,[1] and has not claimed that the plaintiff filed his lawsuit prematurely or that the court lacked jurisdiction over the case because the PRA overrode FOIA's constructive exhaustion scheme. *See*, *e.g.*, 2d J. Stat. Rep., Dkt. #18, at 1-4 (filed June 8, 2026), *Gillon v. NARA*, No. 25-2079 (D.D.C.) [hereinafter *Gillon* 2d JSR].

In 2023, the National Security Archive submitted a FOIA request to the George W. Bush Presidential Library. J. Stat. Rep., Dkt. #22, at 1 (filed June 29, 2026), *Nat'l Sec. Archive v. NARA*, No. 24-3300 (D.D.C.). In November 2024, after NARA failed to release all responsive records, the requester filed a lawsuit under a theory of constructive exhaustion. *See* Compl., Dkt, #1, *passim* (filed Nov. 21, 2024), *Nat'l Sec. Archive v. NARA*, No. 24-3300 (D.D.C.). Since that time, NARA has dutifully processed the responsive records, has provided interim releases, and has not claimed that the plaintiff filed its lawsuit prematurely or that the court lacked jurisdiction over the case because the PRA overrode FOIA's constructive exhaustion scheme. *See*, *e.g.*, J. Stat. Rep., Dkt. #22, at 1-2 (filed June 29, 2026), *Nat'l Sec. Archive v. NARA*, No. 24-3300 (D.D.C.).

In 2022, the Southeastern Legal Foundation submitted a FOIA request to the Barack Obama Presidential Library. Stat. Rep., Dkt. #37, at 1 (filed May 19, 2026), *SE Legal Found., Inc. v. NARA*, No. 23-3819 (N.D. Ga.) [hereinafter *SE Legal* SR]. In August 2023, after NARA failed to release all responsive records, the requester filed a lawsuit under a theory of constructive exhaustion. *See* Compl., Dkt, #1, *passim* (filed Aug. 28, 2023), *SE Legal Found., Inc. v. NARA*, No. 23-3819 (N.D. Ga.). Since that time, NARA has dutifully processed the

---

[1] The records were published online at https://www.archives.gov/presidential-records/vice-presidential-records/selected-vice-presidential-records/gore-records/2020-0040-f.

responsive records, has provided interim releases, and has not claimed that the plaintiff filed its lawsuit prematurely or that the court lacked jurisdiction over the case because the PRA overrode FOIA's constructive exhaustion scheme. *See*, *e.g.*, *SE Legal* SR at 2-3, J.R. 40-41.

In January 2026, Plaintiffs Legal Eagle, LLP and National Security Counselors, Inc. submitted multiple FOIA requests to the Donald J. Trump Presidential Library. In March 2026, after NARA failed to release all responsive records, the requesters filed four lawsuits under a theory of constructive exhaustion. Since that time, NARA has not processed any responsive records (as far as anyone can tell), has not provided any interim releases, and has claimed that Plaintiffs filed their lawsuits prematurely and that the Court lacks jurisdiction over the cases because the PRA overrode FOIA's constructive exhaustion scheme. As *Sesame Street* taught us, one of these things is not like the other, and it does not belong.

NARA's Motion is frivolous and offered in bad faith. Not only is it profoundly unsound as a matter of law and historical practice, it does not even represent the current legal position of NARA or even the Federal Programs Branch of the Department of Justice Civil Division. Since the Federal Programs Branch attorneys representing NARA first announced their intent to file this Motion on 29 April 2026 (Not. of Intent to File Part. Mot. Dismiss / Mot. J. on Pleadings, Dkt. #27, *passim* (filed Apr. 29, 2026), No. 26-920), Federal Programs Branch attorneys representing NARA have filed status reports in two other cases detailing how the agency is diligently processing Presidential records and fully participating in the litigation, with no mention of any objection to the constructive exhaustion theory on which those plaintiffs relied. *See* J. Stat. Rep., Dkt. #31 (filed May 5, 2026), *Cato Inst. v. NARA*, No. 22-1746 (D.D.C.) (signed by James Bickford and Elizabeth Shapiro of the Federal Programs Branch and Brett Shumate of the Civil Division); *SE Legal* SR (signed by Jacob Siler and Elizabeth Shapiro of the

Federal Programs Branch and Brett Shumate of the Civil Division). Furthermore, less than a week before NARA's counsel first raised this objection with the undersigned on 17 March 2026, Federal Programs Branch attorneys filed a motion in a third case in which they raised PRA notice-based objections to a court-ordered production schedule, yet made no mention of any objection to the constructive exhaustion theory on which the plaintiff relied. *See* Unopposed Mot. Clarify, Dkt. #26 (filed Mar. 11, 2026), *Judicial Watch, Inc. v. NARA*, No. 22-3310 (D.D.C.) (signed by Kevin Bell and Elizabeth Shapiro of the Federal Programs Branch and Brett Shumate of the Civil Division).

In other words, NARA and the Federal Programs Branch have no problem when a requester seeking Presidential records from the Reagan, Clinton, Bush, or Obama administrations files a lawsuit based on constructive exhaustion, but when a requester seeking Presidential records from the *Trump* administration does so, they suddenly "discover" a jurisdictional issue and argue that the case must be dismissed. This "rules for thee but not for me" approach to FOIA and PRA litigation has resulted in a Motion that is a waste of the Court's time only offered to delay the proceedings.[2] NARA's Motion is a house of cards built of implications, suggestions, conclusory statements, and a fundamental mischaracterization of the entire point of the purpose behind FOIA's constructive exhaustion provision, and the Court should soundly reject it out of hand.

---

[2] It bears noting that NARA's argument in this case heavily cites Congress's thoughtful, legitimate, and proper enactment of the PRA, while the Government—represented again by the Federal Programs Branch—is arguing elsewhere that the PRA is unconstitutional and never should have been passed. *See Am. Hist. Ass'n v. Trump*, No. 26-1169, 2026 U.S. Dist. LEXIS 111940 (D.D.C. May 20, 2026).

## ARGUMENT

### I.   NARA MISUNDERSTANDS THE POINT OF CONSTRUCTIVE EXHAUSTION

NARA argues, "FOIA's constructive-exhaustion rule impels agencies to process requests faster." (Def.'s Mem. Supp. Part. Mot. Dismiss & J. on Pleadings, Dkt. #18-1, at 17 (filed May 26, 2026), No. 26-371 [hereinafter NARA's Mem.].) According to NARA, applying it to requests for Presidential records would "forc[e] NARA to choose between the President's notice period and administrative exhaustion" (*id.* at 7) and "would cut an ugly gash through the deliberative process Congress established in the PRA" (*id.* at 17). However, as decades of FOIA opinions reveal, the constructive exhaustion rule does not impel agencies to process requests faster. Agencies which do not issue a final response within twenty business days are not required to release all responsive records. As this Circuit explained it:

> [T]o prevent agencies from keeping requesters out of court by simply delaying the administrative process *ad infinitum*, Congress provided that a requester will be deemed to have exhausted his or her administrative remedies "if the agency fails to comply with the applicable time limit provisions" laid out in FOIA. Put simply, if an agency does not respond to a request within twenty working days after receiving it, the requester may typically commence litigation. This court has flatly stated that even if a request "may have been burdensome to the agency or would have to be delayed because of other requests filed earlier," the constructive exhaustion provision still applies.

*Coleman v. DEA*, 714 F.3d 816, 823 (4th Cir. 2013) (citing *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013) [hereinafter *CREW*], & *Pollack v. DOJ*, 49 F.3d 115, 119 (4th Cir. 1995)).

The D.C. Circuit further explained that the only "penalty" an agency faces when it does not issue a final response within twenty working days "is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *CREW*, 711 F.3d at 189. "This scheme provides an incentive for agencies to move quickly but recognizes that

agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement." *Id.* That court further explained that those agencies which find themselves pulled into court due to constructive exhaustion would nonetheless benefit from a statutory safety valve in the form of the "exceptional circumstances" provision:

> [T]he statute provides that, once in court, an agency may further extend its response time by means of the "exceptional circumstances" safety valve. That provision says that if exceptional circumstances exist and an agency "is exercising due diligence in responding to the request," a court may grant the agency "additional time to *complete its review* of the records." 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added). Like the unusual circumstances provision, the exceptional circumstances provision presumes that an agency operating outside the 20-working-day window needs more time to finish gathering and reviewing documents, and more time to decide what to produce and to withhold.

*Id.* at 188.

The D.C. Circuit's final conclusion, endorsed by this Circuit in *Coleman* and its progeny, is entirely fatal to NARA's argument. It held:

> We are intimately familiar with the difficulty that FOIA requests pose for executive and independent agencies. But contrary to the FEC's suggestion, our reading of the statute recognizes and accommodates that reality. As our opinion today emphasizes, the 20-working-day period (actually 30 working days with the unusual circumstances provision) is the relevant timeline that the agency must adhere to if it wants to trigger the exhaustion requirement before suit can be filed. The unusual circumstances and exceptional circumstances provisions allow agencies to deal with broad, time-consuming requests (or justifiable agency backlogs) and to take longer than 20 working days to do so. To reiterate, if the agency does not adhere to FOIA's explicit timelines, the "penalty" is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court.

*Id.* at 189-90. In fact, this Circuit effectively precluded NARA's argument almost twenty years *earlier*, when it explained that the entire point of the exceptional circumstances provision was to assist agencies which could not comply with the statutory deadline for *any* justifiable reason:

> That the request may have been burdensome to the agency or would have to be delayed because of other requests filed earlier does not allow the agency to circumvent the constructive exhaustion provision. Rather, once an agency fails to

respond timely to a request, FOIA permits the requester immediately to file an enforcement suit and authorizes the district court to "retain jurisdiction and allow the agency additional time to complete its review of the records," assuming that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."

*Pollack*, 49 F.3d at 119.

Simply put, Congress recognized that agencies may not be able to meet the statutory deadline for entirely legitimate reasons, and it wrote a solution into the FOIA statute. Courts regularly exercise this authority without objection or comment, and none question whether FOIA's constructive exhaustion provision *was legal*. Until this case, agencies—including Presidential Libraries—did what the law required: they *asked the Court for more time*. *See*, *e.g.*, *Judicial Watch, Inc. v. NARA*, No. 07-1987, 2008 U.S. Dist. LEXIS 141855, at *9-11 (D.D.C. Sept. 30, 2008) (granting stay requested by Clinton Presidential Library); *Judicial Watch, Inc. v. NARA*, No. 07-1297, 2008 U.S. Dist. LEXIS 141853, at *1-2 (D.D.C. May 20, 2008) (same). This type of stay is so common it even has a name: *Open America* (named after *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976)). *Accord Pollack*, 49 F.3d at 117 (citing *Open America*). *That* is what NARA should have done here: demonstrate that it is exercising due diligence in processing Plaintiffs' requests—mentioning the mandatory notification period—as it did in the *Gillon* 2d JSR and the *SE Legal* SR (attached as Exs. 6-7[3] for the Court's reference, J.R. 34-42) and ask the Court to allow it to continue processing the responsive records. Instead, it chose to file a frivolous Motion and waste the Court's time while

---

[3] Because NARA did not cleanly comply with Rule III(C) of this Court's Standing Order, Plaintiffs have attempted as best they can to properly denote and reference their exhibits. Because NARA labeled its five exhibits "Appendix 1-5," Plaintiffs' first exhibit is identified as "Ex. 6." Additionally, because NARA did not include J.R. numbers in its appendix, Plaintiffs will treat the page numbers assigned to the prematurely filed Appendix by the CM/ECF system as the J.R. numbers and accordingly begin their numbering at J.R. 34.

simultaneously demonstrating its lack of conviction in its own position in the other cases running concurrently which involve *other* presidents' records.

## II.    NARA'S HISTORICAL PRACTICE WEIGHS AGAINST DISMISSAL

Plaintiffs began this brief with a short demonstration of the hypocrisy of NARA's argument, but that was only a taste. The fact of the matter is, no published opinion has ever even *hinted* that a lawsuit for Presidential records filed under a constructive exhaustion theory *might* be premature. *See*, *e.g.*, *Smith v. NARA*, 415 F. Supp. 3d 85 (D.D.C. 2019); *Judicial Watch, Inc. v. NARA*, 845 F. Supp. 2d 288 (D.D.C. 2012); *Judicial Watch, Inc. v. NARA*, No. 07-1987, 2008 U.S. Dist. LEXIS 141855 (D.D.C. Sept. 30, 2008); *Judicial Watch, Inc. v. NARA*, No. 07-1297, 2008 U.S. Dist. LEXIS 141853, at *1-2 (D.D.C. May 20, 2008), Order on Pls.' Mot. for Award of Att'ys' Fees & Costs, Dkt. #49 (filed Sept. 1, 2006), *Cooke v. Ronald Reagan Presidential Lib.*, No. 05-6518 (C.D. Cal.).

Furthermore, the undersigned was unable to identify a single *brief* even suggesting such a thing. He surveyed FOIA litigators and former NARA personnel and could not identify a case in which this argument was made. He reviewed the case files on FOIAProject.org for every lawsuit filed since 2020 in which NARA was a party, and he could not identify a *single case* where a person filed a request for Presidential records and then filed suit before the production was complete in which NARA's response was *anything* besides calmly processing the responsive records and concluding the lawsuit. The results of his research are as follows:

- *Legal Eagle, LLC v. Nat'l Sec. Council Recs. Access & Info. Mgmt. Directorate*, No: 20-1732 (D.D.C.): Case concluded without motion to dismiss. J. Stat. Rep., Dkt. #49 (filed Aug. 5, 2022), *Legal Eagle, LLC v. Nat'l Sec. Council Recs. Access & Info. Mgmt. Directorate*, No. 20-1732 (D.D.C.);

- *Cato Inst. v. NARA*, No. 22-1746 (D.D.C.): Case in process without motion to dismiss. J. Stat. Rep., Dkt. #31 (filed May 5, 2026), *Cato Inst. v. NARA*, No. 22-1746 (D.D.C.);

- *Cato Inst. v. NARA*, No. 22-2064 (D.D.C.): Case concluded without motion to dismiss. J. Stip. of Dismissal with Prej., Dkt. #13 (filed Dec. 19, 2022), *Cato Inst. v. NARA*, No. 22-2064 (D.D.C.);

- *Am. First Legal Found. v. NARA*, 22-2713 (D.D.C.): Case concluded without motion to dismiss. J. Stat. Rep., Dkt. #38 (filed June 10, 2026), *Am. First Legal Found. v. NARA*, No. 22-2713 (D.D.C.);

- *Judicial Watch, Inc. v. NARA*, No. 22-3310 (D.D.C.): Case in process without motion to dismiss. Order, Dkt. #28 (filed May 29, 2026), *Judicial Watch, Inc. v. NARA*, No. 22-3310 (D.D.C.);

- *Milliron v. NARA*, No. 23-1222 (W.D. Mich.): Case concluded without motion to dismiss. Stip. Order Dismissing Defs. NARA & DHS, Dkt. #52 (filed Jan. 13, 2025), *Milliron v. NARA*, No. 23-1222 (W.D. Mich.);

- *SE Legal Found., Inc. v. NARA*, No. 23-3819 (N.D. Ga.): Case in process without motion to dismiss. Stat. Rep., Dkt. #37 (filed May 19, 2026), *SE Legal Found., Inc. v. NARA*, No. 23-3819 (N.D. Ga.);

- *Am. First Legal Found. v. NARA*, No. 23-829 (D.D.C.): Case concluded without motion to dismiss. J. Stat. Rep., Dkt. #16 (filed Sept. 6, 2024), *Am. First Legal Found. v. NARA*, No. 23-829 (D.D.C.);

- *Ctr. to Advance Sec. in Am. v. NARA*, No. 24-3083 (D.D.C.): Case in process without motion to dismiss. J. Stat. Rep., Dkt. #17 (filed May 14, 2026), *Ctr. to Advance Sec. in Am. v. NARA*, No. 24-3083 (D.D.C.);

- *Nat'l Sec. Archive v. NARA*, No. 24-3300 (D.D.C.): Case in process without motion to dismiss. J. Stat. Rep., Dkt. #22 (filed June 29, 2026), *Nat'l Sec. Archive v. NARA*, No. 24-3300 (D.D.C.); and

- *Gillon v. NARA*, No. 25-2079 (D.D.C.): Case in process without motion to dismiss. *Gillon* 2d JSR.

Eleven cases against NARA for Presidential records, each brought under a theory of constructive exhaustion. Eleven cases where NARA properly responded to the cases and conceded the court's jurisdiction and the plaintiffs' reliance on constructive exhaustion. As NARA correctly explains, "In separation-of-powers cases [the Supreme] Court has often 'put significant weight upon historical practice.'" (NARA's Mem. at 13 (quoting *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 23 (2015)).)[4] NARA's historical practice has been to recognize that FOIA's constructive exhaustion provision applies to requests for Presidential records.

In fact, NARA's conduct at the administrative level further demonstrates its longstanding recognition of the applicability of FOIA's deadline. On 18 February, the Trump Library acknowledged Request No. 26-19620-F and formally invoked "unusual circumstances" to give itself an additional ten business days to respond. (Compl., Dkt. #1, ¶ 34 (filed Mar. 5, 2026), No. 26-920.) In that letter, it stated:

> Your request falls within one of the "unusual circumstances" categories contemplated by the FOIA, 5 U.S.C. §552(a)(6)(B)(iii) (I), (II) and (III), and we

---

[4] Plaintiffs do not necessarily agree that this is a separation-of-powers case, and NARA has not made an argument that it is, beyond this citation. Plaintiffs merely point out that even applying NARA's logic, its argument fails.

10

> need additional time to respond to your request *beyond the twenty business days provided by the FOIA statute*. We regret the necessity of this delay but assure you that your request will be processed as soon as possible. In accordance with 5 U.S.C. §552(a)(6)(B)(i) the request will take an additional 10 working days from the date of this letter.

Ltr. from Butler to McClanahan of 2/18/26 (emphasis added), attached as Ex. 8, J.R. 43-44.[5] Not only did NARA formally invoke FOIA's language regarding deadlines, it explicitly conceded that the agency's deadline was "provided by the FOIA statute." Now that the case is in litigation, NARA asks this Court to find that "the only plausible reading is that the FOIA's deadline does not apply to PRA requests to NARA" (NARA's Mem. at 1), while its own official correspondence concedes that FOIA's deadline applies to a PRA request to NARA.

NARA's position on this question is additionally clear, beyond its conduct in this case and other litigation. According to its argument, the need to provide notice to former and incumbent presidents is what makes it impossible for the agency to adhere to FOIA's twenty-business-day deadline, and therefore it would be unfair to allow a requester to pull it into court for missing that deadline, forcing it "to choose between the President's notice period and administrative exhaustion." (*Id.* at 7.) This line of argument boils down to a legal fiction that, but for the notice period, NARA would be able to process requests within twenty business days. But NARA's own published regulations give the lie to that contention:

> NARA places FOIA requests in simple or complex processing queues to be processed in the order received, on a first-in, first-out basis. In most cases, we make a determination about release of the records you requested within 20 working days from when the appropriate office receives your request (simple queue processing). However, if complexity or unusual circumstances prevent NARA from making a decision within 20 working days, we place your request

---

[5] Because NARA cites both Rules 12(b)(1) and 12(c), while quoting the standard for a Rule 12(b)(6) motion, and does not explain how these rules apply to this case, it is unclear which rules apply to which arguments. However, since, even assuming the more stringent Rule 12(b)(6) evidentiary standards, FOIA correspondence would be considered integral to the complaint, the Court can consider it. *Accord Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

into a complex processing queue. . . . *We place into a complex processing queue any request that cannot be completed within 20 working days*.

36 C.F.R. § 1250.26(f)-(g) (emphasis added). In other words, NARA formally defines its *entire complex queue* as requests that *cannot be completed* by the deadline. According to NARA's argument in this case, that should mean that no person who files a complex request can file a lawsuit under the theory of constructive exhaustion, because it would be impossible for NARA to meet the deadline.

However, in anticipation of NARA's argument that it is not arguing that complex requests cannot be constructively exhausted, only requests for Presidential records, the rest of this regulation explains how NARA has *always* considered requests for Presidential records to be no different than any other "request that cannot be completed within 20 working days." "We place into a complex processing queue any request that cannot be completed within 20 working days due to complexity, volume, because it contains national security information, *because it involves Presidential or Vice Presidential records*, or involves unusual circumstances." 36 C.F.R. § 1250.26(g) (emphasis added). On this specific point, NARA further explains, "Although we send you an initial status response to your FOIA request within 20 working days in these cases, the final response to your FOIA request will take longer. We can provide the final response only at the end of the Presidential notification period set forth in the Executive order." 36 C.F.R. § 1250.26(j).

NARA asks this Court to conclude that Congress intentionally changed the legal landscape when it added 44 U.S.C. § 2208 in November 2014, "codifying" the distinction between the PRA and FOIA. (NARA's Mem. at 16-17.) However, when NARA amended the above regulation in 2017, it preserved the incorporation of "the applicable Executive order on implementation of the PRA" from the September 2014 version and did not reference 44 U.S.C. §

12

2208. 36 C.F.R. § 1250.26(j). Contrary to NARA's position in this case, NARA's observation that it "amended the PRA regulation after Section 2208 was enacted, but not the statement that NARA could not respond to a PRA request until it completed the presidential notification period first" (NARA's Mem. at 4) only demonstrates that NARA was so unconcerned with the statutory change that it did not even *mention* it when it amended the implementing regulation three years later.

When Congress passed the PRA, "it incorporated the Freedom of Information Act (FOIA) as a procedural vehicle for requesting presidential records." (*Id.* at 1.) It did not quietly exclude the only part of FOIA that allows timely judicial review and put nothing else in its place. "Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Congress knew this in 1978. The General Services Administration knew this in 1978. Neither did Congress override FOIA when it amended the PRA. Congress knew this in 2014. NARA knew this in 2014. This is why none of the legislative history quoted by NARA actually refers to FOIA's constructive exhaustion provision. And, as shown above, NARA and its counsel know this in 2026 as well, in *other* cases. They are just pretending not to know it in *these* cases because that knowledge is now inconvenient.

## III.    NARA'S INTERPRETATION IS PRACTICALLY UNWORKABLE

Even if one assumes *arguendo* that there is some ambiguity in the interplay between the PRA notice provision and FOIA's constructive exhaustion provision—which there is not— NARA's solution is unworkable in a practical sense as well. For instance, NARA need only provide notice to former and incumbent presidents if it intends to release information. Does this

mean that a requester can sue under constructive exhaustion if NARA does not intend to release information? Also, FOIA has a six-year statute of limitations which runs from the day after the twentieth business day, and a requester simply cannot bring a lawsuit under *actual* exhaustion if he waits for the agency to issue a final response, if that final response is issued more than six years after that date. If FOIA is the mechanism for requesters to get judicial review of NARA's response to a request for Presidential records, can a requester bring a lawsuit after NARA's final response, ten years later? What *is* the statute of limitations for a FOIA case involving Presidential records, and when does it start to run? And in what mousehole did Congress allegedly hide that information?

These are just examples of the problems with NARA's argument. But NARA's argument itself is internally inconsistent. It admits that Count 2 of Case No. 26-1214 is not covered by this Motion (*see* NARA's Mem. at 6), but it gives no reason *why* that count should be excluded. In that count, NARA identified no records, Plaintiffs appealed that determination, NARA did not resolve the appeal within twenty business days, and Plaintiffs filed the lawsuit. According to NARA's logic, the chance that NARA might reverse the initial determination on appeal and later identify records about which it might need to notify former and incumbent presidents would mean that constructive exhaustion does not apply, but it does not *make* that argument. Instead, constructive exhaustion is apparently fine as long as the notice happens after an administrative appeal. Even in the absence of all the other examples of NARA's historical practice, this fact is enough to show the weakness of its argument.

In contrast to NARA's argument, which would upend decades of understood law and practice and leave numerous unanswered questions in its wake, requiring yet more litigation down the road, Plaintiffs maintain that the Court should treat this case as NARA and other courts

have treated all the other FOIA cases for Presidential records. Moreover, there is a suitable analogue which lends itself to this analysis: litigation over invocations of FOIA Exemption (b)(4).

It has been well-understood for decades that an agency may invoke Exemption (b)(4) to withhold information provided to the agency by a commercial entity which might cause competitive harm to the submitter. Each agency has published a regulation establishing the manner in which it involves the submitter in this process. 36 C.F.R. § 1250.82 fulfills this role for NARA. According to that regulation, "We provide the submitter with 20 working days from the date of NARA's notice to object to the release and to explain a basis for the objection, including justification and support for the claim. The NARA FOIA Officer may extend this period as appropriate." 36 C.F.R. § 1250.82(e). Due to this congressionally-blessed notice period created because "Congress expected the Executive Branch to establish the procedure for [involving submitters]" (NARA's Mem. at 11), it is literally *impossible* for NARA to respond within twenty business days to *any* FOIA request for commercial records. This is directly comparable to the pre-2014 period, in which, at least according to NARA, Congress implicitly left it up to the Executive Branch to decide when FOIA requesters seeking Presidential records could file a lawsuit. And yet nobody ever questioned whether a requester seeking information potentially exempt under Exemption (b)(4) could file a lawsuit after twenty business days.

## IV.    NARA'S OBJECTION IS EFFECTIVELY MOOT

The only thing for certain about NARA's Motion is the contention that Plaintiffs filed their lawsuits prematurely. NARA leaves it to the Court to guess, however, when Plaintiffs *could* have filed their lawsuits. Does NARA maintain that Plaintiffs cannot litigate its response to a request until NARA has finished processing every responsive record and the former and

incumbent presidents have made their final positions known and any litigation on that question has been exhausted up to and including a Supreme Court decision, even if that might take multiple decades? If so, this Circuit already decided that question when it stated that agencies could not "keep[] requesters out of court by simply delaying the administrative process *ad infinitum*." *Coleman*, 714 F.3d at 823.

However, if NARA simply quibbles with the *duration* of the constructive exhaustion period, its argument has been rendered effectively moot by the passage of time. Assume, for example, that NARA concedes that *it* must complete *its* review and provide any applicable notice to former and incumbent presidents within twenty or thirty business days, and that a requester can then file a lawsuit at the end of the 60-day—extendable to 90-day—notice period. After all, NARA states (without support) that "constructive exhaustion under FOIA occurs only if the agency breaches an applicable deadline" (NARA's Mem. at 1), and the only potentially "applicable deadlines" would be FOIA's 20/30-day deadline[6] and the PRA's 60/90-day deadline. In that case, Plaintiffs would have been able to file these lawsuits on 29 May, or at the latest 14 July.[7] Using either a 60- or 90-day notice period, then, Plaintiffs could simply file amended complaints *in a week* which would satisfy NARA's interpretation (and, in fact, Plaintiffs *did* seek leave to file an amended complaint in Case No. 26-920 on 3 July, which renders NARA's Motion moot as far as that case is concerned, since President Trump did not extend the 60-day period). By waiting until the eve of the 29 May deadline to even file this Motion, NARA chose

---

[6] Agencies may unilaterally grant themselves an additional ten business days by claiming unusual circumstances. 5 U.S.C. § 552(a)(6)(B)(i).

[7] Since NARA invoked unusual circumstances to claim an additional ten business days for the request at issue in Count 1 of Case No. 26-920 (Compl., Dkt. #1, ¶ 34 (filed Mar. 5, 2026), No. 26-920), adding sixty more business days to that deadline would move the deadline to 28 May, and adding thirty more business days to that would move the deadline to 13 July. The remainder

to waste this Court's time with a Motion that can have no meaningful effect on the litigation, since NARA has given no reason for the Court to dismiss the cases *with prejudice*. Meanwhile, it has made no interim releases or even advised the Court of how it is processing the responsive records or providing the required notice to President Trump, as it did less than a month ago in *Gillon*. *Gillon* 2d JSR at 1-4, J.R. 34-37. It is clear that the only purpose of this Motion is delay.

## CONCLUSION

As NARA stated, "courts 'hesitate to adopt an interpretation that would eviscerate such significant aspects of the statutory text.'" (NARA's Mem. at 7 (quoting *American Hosp. Ass'n v. Becerra*, 596 U.S. 724, 737 (2022)).) And yet NARA tells this Court that "[t]he only plausible reading" (*id.* at 17) of an amendment to the PRA which makes no mention of FOIA is to eviscerate the entire judicial review scheme established by that statute and let the agency take as long as it wants to take to process requests for Presidential records without any judicial oversight. This reading is irreconcilable with the statutory language, the legislative history, the controlling case law, the historical practice, and basic common sense. The Court should definitively reject this spurious argument.

Date:   July 7, 2026                              Respectfully submitted,

                                                  /s/ Kelly B. McClanahan
                                                  Kelly B. McClanahan, Esq.
                                                  MD Bar #31832
                                                  National Security Counselors
                                                  1451 Rockville Pike
                                                  Suite 250
                                                  Rockville, MD  20852
                                                  501-301-4672
                                                  240-681-2189 fax
                                                  Kel@NationalSecurityLaw.org

                                                  *Counsel for Plaintiffs*

---

of the requests would be eligible for litigation ten business days before those dates, since NARA did not timely claim unusual circumstances for them.