**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| LEGAL EAGLE, LLC, *et al.*, | |
| Plaintiffs, | No. 8:26-cv-371-TDC |
| | No. 8:26-cv-847-TDC |
| v. | No. 8:26-cv-920-TDC |
| | No. 8:26-cv-1214-TDC |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, *et al.*, | |
| Defendants. | |

## REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

**INTRODUCTION**

Plaintiffs' opposition brief does not respond to the Motion to Dismiss. It argues only that assuming the Freedom of Information Act (FOIA)'s 20-working-day response deadline applies to the Presidential Records Act (PRA), a court that properly obtains jurisdiction may "retain" jurisdiction and give the agency more time to respond. 5 U.S.C. § 552(a)(6)(C)(i). But that argument fails to join issue with the Motion, which argues that FOIA's deadline does *not* apply. The Court could grant the Motion on that basis alone. Tracing the history of the PRA, Defendants National Archives and Records Administration (NARA) and Acting Archivist Edward Forst[1] explained that as a matter of textual analysis, legislative history, and common sense, Congress never intended FOIA's 20-working-day response deadline to apply to the PRA, which since 2014 has required Defendants to provide a 60-working-day notice period before making disclosures in response to PRA requests. The Opposition does not contest, much less refute, any of those points.

Other than that, Plaintiffs say NARA *must* be wrong because NARA's position favors NARA too much, because the argument is supposedly new, and because NARA has not objected to lawsuits regarding earlier requests. But these are policy arguments, not legal arguments, and they cannot substitute for statutory text. Accordingly, Defendants' motion should be granted, and the PRA records-denial claims dismissed as premature.

---

[1] On July 8, 2026, the Court granted leave to amend the complaint in Case No. 8:26-cv-920 only. *See* ECF 53. The amended complaint added three defendants and four counts. *See* ECF 54. NARA filed the instant Motion to Dismiss before the Court granted leave to amend. *See* ECF 39. The amended complaint's additions do not affect the NARA-specific issues raised in the Motion. *See* ECF 25 at 2. As Acting Archivist of NARA, Defendant Forst joins NARA's Motion.

I.      **The Court Cannot Use *Open America* to Scotch-Tape the PRA and FOIA Together**

    A.      ***Open America* Provides a Different Solution to a Different Problem**

Plaintiffs identify only one statutory provision—FOIA's "exceptional circumstances" provision—in their effort to reconcile FOIA's 20-working-day deadline with the PRA's 60-working-day notice period. That provision cannot achieve what Plaintiffs want it to achieve.

Under the "exceptional circumstances" provision, "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may *retain* jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added); *see* Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Partial Motion to Dismiss and for Judgment on the Pleadings at 6, ECF 52 (Opp.). As construed by the D.C. Circuit, this provision says that when a court *has* jurisdiction in the first place and the agency has a large backlog of requests, a district court may stay a case and allow the agency to process the request at bar on a "first-in, first-out basis." Otherwise, a FOIA requester could in practice skip the line by filing a lawsuit after 20 (then 10) working days, rewarding him for suing even though the many requesters ahead of him in line could have sued before him. *See Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 614-15 (D.C. Cir. 1976). This approach, if condoned, "would ultimately profit no one," since everyone would rationally sue to secure their own places in line, and "no one would be assigned a priority position any different than he would achieve if all applicants were left to the priorities fixed by the agency." *Id.* at 615 (adding that alternatively, the wealthy would skip the line and people who could not afford a lawyer would be left out).

Plaintiffs' reliance on *Open America* puts the cart before the horse. A court may not "retain" jurisdiction it never had to start. To "retain" a thing assumes possession of the thing. *See Retain*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("To hold in possession or under control;

to keep and not lose, part with, or dismiss."). For the reasons detailed at length in the Motion to Dismiss, FOIA's statutory deadline never applied to the PRA, so FOIA's constructive-exhaustion rule never triggered, and this Court never obtained jurisdiction over this action. As such, there is no jurisdiction to "retain."

At the end of their brief, Plaintiffs briefly suggest that this Court could stitch together the 20-working-day FOIA interval and the 60-working-day PRA interval to give NARA an 80-working-day deadline. Opp. at 16-17. They provide no support for this contention. To the contrary, FOIA provides agencies only one option to extend the 20-working-day deadline (where that deadline applies), and that option is capped at ten working days. *See* 5 U.S.C. § 552(a)(6)(B)(i). Making the FOIA deadline 30 working days instead of 20 would not bridge the gap between FOIA and the PRA. 30 is still fewer than 60.

In addition, the PRA's 60-day notice period is not a valid basis for an *Open America* stay. The exceptional circumstances provision is specific to FOIA, and in any case does not apply to "a delay that results from a predictable agency workload of requests." *Id.* § 552(a)(6)(C)(ii). In a PRA case, there is no delay more predictable than the statutory 60-day notice period for presidential privilege review, which applies in every case where the Government proposes producing presidential records. As such, Plaintiffs' proposed compromise is not the slam-dunk Plaintiffs seem to think it is.

**B.    Plaintiffs Identify Only Two *Open America* Stays in PRA Cases in Fifty Years, Which Have Little Resemblance to Today's Case**

An *Open America* stay in a PRA case is a novel situation, to say the least. Plaintiffs say that NARA's constructive-exhaustion argument is unprecedented and that *Open America* is the usual response, *see* Opp. at 7, but *their* proposal is far from established practice. Plaintiffs and Defendants together have found only two *Open America* stays in PRA cases in the last 50 years,

both involving Judicial Watch's attempts to uncover records from then-Senator Hillary Clinton's tenure as First Lady during the 2008 presidential election. *Judicial Watch, Inc. v. U.S. NARA (Judicial Watch I)*, No. 1:07-cv-1267, 2008 WL 11516011, 2008 U.S. Dist. LEXIS 141853 (D.D.C. May 20, 2008) (phone logs); *Judicial Watch, Inc. v. U.S. NARA (Judicial Watch II)*, No. 1:07-cv-1987, 2008 WL 11516012, 2008 U.S. Dist. LEXIS 141855 (D.D.C. Sept. 30, 2008) (records of the Clinton-chaired Task Force on National Health Care Reform). PRA litigation is not common, and *Open America* stays under the PRA even less so. It was perfectly reasonable for NARA to sequence a constructive-exhaustion argument ahead of any *Open America* argument.

### 1.    The Hillary Clinton Cases Had an Unusual Procedural History

Quantitatively and qualitatively, the Hillary Clinton litigation is *sui generis*. It predates the 60-working-day presidential notice period, which Congress added in 2014. (In fact, the 2014 amendments postdate nearly every single judicial opinion Plaintiffs cite, underscoring Plaintiffs' intrinsic discomfort with the statutory text.) It took place while the courts were concurrently deciding how long the presidential notice period (then set by executive order) should be. When the first *Judicial Watch* action was filed, the presidential notice period had no strict limits. The day before NARA acquiesced to district court jurisdiction over that action, a different court had issued an injunction setting a 30-day presidential notice period. Two district court cases that predate the currently-required 60-working-day presidential notice period hardly bind the Department of Justice to a position for all time.

To begin, as NARA explained in its motion to dismiss, "[f]rom 1978 to 2014, Congress left it to the Executive Branch to establish procedural rules for incumbent and former Presidents to raise executive privilege," and in turn, "[t]he Executive has always granted itself a review period longer than FOIA's"—"initially guided by executive orders," and later set by Act of Congress. *See* Memorandum in Support of Partial Mot. to Dismiss and for Judgment on the Pleadings at 14,

ECF 18-1 (MTD). President Reagan gave presidents 30 calendar days to review documents and to raise executive privilege. *See Presidential Records*, Executive Order (EO) 12667 § 2(b), 54 Fed. Reg. 3403 (Jan. 18, 1989). After Congress extended FOIA's response period from 10 to 20 working days in 1997, there was a short period where "compliance with both the FOIA deadline and the Reagan EO notice period was technically in the realm of possibility, provided that NARA granted itself a ten-working-day extension *and* the incumbent and former Presidents both declined to invoke the privilege." MTD at 15. The Bush Administration ended that by replacing the Reagan EO with *Further Implementation of the Presidential Records Act*, Executive Order 13233 § 3(b), 66 Fed. Reg. 56025 (Nov. 1, 2001), which imposed no deadline on former Presidents to review documents for privilege.

Four weeks after President Bush issued the EO, the American Historical Association challenged the EO in court. *See* Compl., *American Hist. Ass'n v. NARA*, No. 1:01-cv-2447 (D.D.C. filed Nov. 28, 2001). After many years of litigation, the U.S. District Court for the District of Columbia granted partial summary judgment for the plaintiffs and enjoined the Government from applying the Bush EO's presidential notice period. *See American Hist. Ass'n v. NARA*, 516 F. Supp. 2d 90, 111-12 (D.D.C. 2007). The district court said that NARA had discretion to give a former President more than 30 days to review records for privilege, but that the Bush EO erred insofar as it required the Archivist to always give more than 30 days. *Id.* at 110. (President Obama short-circuited this dispute by repealing the Bush EO. *Presidential Records*, Executive Order 13489 § 2(b), 74 Fed. Reg. 4669 (Jan. 21, 2009).)

On July 17, 2007, while the *AHA v. NARA* plaintiffs' motion for summary judgment was pending, Judicial Watch sued the Clinton Library to obtain "the telephone log books from Hillary Clinton's tenure as First Lady." *Judicial Watch I*, 2008 WL 11516011, at *1; Compl., *Judicial*

*Watch I*, ECF 1. It concurrently moved for a preliminary injunction. Judicial Watch's complaint did not mention the PRA at all, and implicitly assumed that FOIA's 20-working-day deadline applied to the PRA. *See* Compl. ¶ 8, *Judicial Watch I*. NARA's opposition to the motion for preliminary injunction assumed *arguendo* that FOIA's 20-day deadline applied. *See* Defendant's Opp. to Plaintiff's App. for Injunctive Relief at 15, *Judicial Watch I*, ECF 5 (PI Opposition). But its later-filed answer hedged, denying "any characterization [of the response deadline] that is inconsistent with the provisions of" the PRA, FOIA, *or* the Bush EO. *See* Answer, *Judicial Watch I*, ECF 8 ¶ 8.

Regardless of NARA's position (or lack thereof) on constructive exhaustion, NARA has not mechanically assumed that every part of FOIA applies to the PRA, as Plaintiffs would have it. For example, FOIA statutorily provides for expedited processing of requests, but NARA affirmed in the Clinton cases that it has refused to expedite *any* requests for presidential records, saying expedition was inconsistent with the Presidential notice period. *See* PI Opposition at 7 (quoting 36 C.F.R. § 1250.28(b) (2007), which at the time said that the agency "cannot expedite requests for Presidential records," and now says that "NARA cannot … shorten the Presidential notification period"). In so doing, NARA confirmed the principle it renews today: when the PRA and FOIA clash, the PRA wins.

The Court ordered NARA in *Judicial Watch* either to file a dispositive motion or to state a schedule for processing the request—i.e., to acquiesce to judicial supervision. *See* Order, *Judicial Watch I*, ECF 9. But on October 1, 2007, the *AHA v. NARA* court enjoined the Government from applying Section 3(b) of the Bush EO. The very next day, NARA acquiesced to judicial supervision and represented that it would "not take any action that is inconsistent with the [*AHA v. NARA*] court's Order." *See* Defendant's Status Report & Processing Schedule at 3 n.1, *Judicial*

6

*Watch I*, ECF 10. It assumed *arguendo* that FOIA's 20-day deadline applied and requested an *Open America* stay. *See id.* at 13-15. The district court granted the stay. *Judicial Watch I*, 2008 WL 11516011, at *1.

A month after NARA agreed to proceed in district court, Judicial Watch sued NARA again, this time to enforce a PRA request over Hillary Clinton's work as Chair of the Task Force on National Health Care Reform. *See* Compl. ¶ 5, *Judicial Watch II*, ECF 1. Neither the complaint nor NARA's answer discussed FOIA's deadline. *Id.*; Answer, *Judicial Watch II*, ECF 2. NARA moved to dismiss on unrelated grounds, and alternatively moved for an *Open America* stay. This motion also cited the *AHA v. NARA* decision and assumed *arguendo* that FOIA's deadline applied to the PRA. *See* Mem. of Points and Authorities in Support of Defendant's Mot. to Dismiss or, in the Alternative, for a Stay of the Proceedings at 6 n.4 & 23, *Judicial Watch II*, ECF 8-1. Citing the *Open America* stay in the phone log case, the district court granted a stay too. *Judicial Watch II*, 2008 WL 11516012, at *4-5.

### 2. This Case and the Hillary Clinton Cases Answered Two Very Different Questions

From this complex procedural history, two points are clear, and both undermine Plaintiffs' position. *First*, neither case says (or even implies) that a court may use *Open America* to Scotch-tape the PRA's 60-working-day Presidential notice period to FOIA's 20-working-day deadline. That notice period did not even exist in 2008. Indeed, NARA's decision to acquiesce to district court jurisdiction dovetails with its focus on compliance with an intervening decision of a different court, which had just upended the deadlines on which NARA had relied for the last six years, and whose reasoning was itself undercut by Congress' PRA amendments in 2014. As NARA's Motion explained, from October 2, 1997, to November 1, 2001, and again after October 1, 2007, it was (very technically) possible to reconcile FOIA's deadline (which could be extended by 10 working

7

days) with the 30-calendar-day presidential review period Judge Kollar-Kotelly revived in *AHA v. NARA*. *See* MTD at 15. But in 2014, Congress enacted a 60-working-day review period. *See id.* at 16. For the reasons set forth in the Motion, that amendment decisively confirmed FOIA's 20-day deadline does not apply to the PRA. *See id.* at 7-9, 16.

*Second*, the *Judicial Watch* courts' assumption that that they had subject matter jurisdiction has no persuasive value, since no party squarely addressed (or even contested) the point. Since the jurisdictional issue was never directly presented to the courts, the *Judicial Watch* district courts' decisions to take the cases are the purest form of "drive-by jurisdictional rulings" with "no precedential effect." *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 91 (1998).

The PRA's text is clear and the *Open America* cases Plaintiffs cite had no opportunity to consider it. The Court should reject Plaintiffs' invitation to use *Open America* to fashion a new statute that Congress did not actually enact.

### C.      Plaintiffs' Naked Policy Rationale Fails

Lastly, Plaintiffs argue that NARA *must* be wrong because the constructive-exhaustion rule is "the only part of FOIA that allows timely judicial review" and if NARA is right, it could theoretically run out the six-year FOIA statute of limitations by refusing to process a request. Opp. at 13-14. But that contention is not true. If NARA failed to respond to a PRA request within six years, Plaintiffs could file an Administrative Procedure Act withholding claim—like the one they filed in this very proceeding. *See* First Am. Compl. ¶¶ 52-58 (No. 26-920). In any event, NARA fully intends to process Plaintiffs' requests; it asks only that Plaintiffs wait their turn.

Plaintiffs' argument is also internally inconsistent. Plaintiffs say that Congress could not have possibly meant to exempt the PRA from FOIA's 20-working-day deadline, because Congress does not "hide elephants in mouseholes." Opp. at 13 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)). But it is Plaintiffs' position that would twist the PRA into knots.

As Defendants already explained, Congress' 2014 amendments were *more* generous to former presidents than the Obama EO they replaced. But under Plaintiffs' theory, these amendments would actually be *worse* for former presidents, because by "layering a 90-working-day review period on a 20-working-day deadline," they would effectively force every PRA request into district court, no matter how hard the agency tried to comply. *See* MTD at 7-8. It is inherently implausible for statutes to be drafted in such a convoluted way. *See id.* at 8 (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 167 (2021) for the point that if Congress actually wanted every PRA request to go to district court, "there were more straightforward ways to do that"). Plaintiffs unsurprisingly reply that being sued is not so bad, *see* Opp. at 5, but that is an easy thing for a FOIA plaintiff to say. As *Open America* explained, too many FOIA lawsuits trigger a race to the bottom where everyone who files a request has to protectively sue the agency to keep their place in line. 547 F.2d at 615.

Most importantly, Plaintiffs' argument fails because it is policy—and not even accurate policy. "[I]t frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law," *Rodriguez v. United States*, 480 U.S. 522, 526 (1987). Given the textual evidence to the contrary, there is no basis to assume that by enacting the PRA, Congress necessarily wanted the district courts to supervise every PRA request. Disclosure is a valid PRA goal, but "no statute yet known 'pursues its [stated] purpose [ ] at all costs.'" *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (citation omitted). And the PRA, as written, is not as singularly focused on immediate disclosure as Plaintiffs would like it to be. As NARA explained in its Motion to Dismiss, "[t]he PRA aims to

balance the broader goal of disclosure with constitutionally grounded concerns about Executive Branch deliberation, stakeholder comments, and multiple layers of review." MTD at 10.[2]

Even if the Court agrees that Plaintiffs' preferred reading would be good policy, that cannot dislodge what Congress actually wrote. "Congress generally 'intend[s] the full consequences of what it sa[ys]'—even if 'inconvenient, costly, and inefficient.'" MTD at 17 (quoting *Thacker v. TVA*, 587 U.S. 218, 224 (2019)). The solution, in those cases, is a statutory fix. "If Congress determines that [a law, as interpreted by a court,] is unwise, it may amend the statutory language .... Until then, 'it is of course our job to apply faithfully the law Congress has written.'" *Lackey v. Stinnie*, 604 U.S. 192, 205 (2025) (citation omitted).

## II.    Plaintiffs' Adverse-Possession Jurisdictional Theory Lacks Merit

Scattered throughout Plaintiffs' brief is a series of related "but in this other case" arguments, which boil down to the belief that because NARA has not challenged subject matter jurisdiction in other situations, this challenge must be wrong. At best, this position sounds in waiver and acquiescence—doctrines with no relevance to subject matter jurisdiction. At worst, it is *ad hominem*, and the Court should summarily reject it as non-responsive.

### A.    There Is No Statute of Limitations, Waiver, or Acquiescence Defense to Jurisdictional Arguments

Plaintiffs collect several PRA cases where NARA did not challenge jurisdiction and add that NARA sent them a boilerplate letter mentioning FOIA's 20-day deadline in connection with their PRA requests. *See* Opp. at 8-11. As a waiver argument, that is dead on arrival. "No branch may rely on adverse possession to claim power that the Constitution vests elsewhere." *Trump v.*

---

[2] Plaintiffs insinuate NARA is not concerned about the will of Congress because in a different case against both NARA and the White House, NARA consented to a legal brief arguing the PRA was unconstitutional. But in both cases, NARA agreed to process PRA requests as though the PRA was constitutional. *See* McClure Decl., ECF 20-1 (No. 26-920); *Am. Hist. Ass'n v. Trump*, 2026 WL 1412395, at *9-10 (D.D.C. May 20, 2026). As such, the other court *declined* to enjoin NARA.

*Slaughter*, 609 U.S. _, 2026 WL 1855612, at *16 (U.S. June 29, 2026). Nowhere is this more true than subject matter jurisdiction. Plainly, as a practical matter, a defendant's failure to contest jurisdiction makes it more likely a court will assume jurisdiction exists. Even so, it is legally impossible for a litigant to waive subject matter jurisdiction. *See* FED. R. CIV. P. 12(h)(3). Courts are obligated to examine their own jurisdiction *sua sponte*, "even though the parties are prepared to concede it." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997) (citation omitted). Litigants may not waive jurisdiction in the short run. *See id.* Nor may they do so in the long run. To the contrary, jurisdictional rulings based on litigants' implicit or explicit concessions have "no precedential effect." *Steel Company*, 523 U.S. at 91; *accord Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) ("[S]tanding was neither challenged nor discussed in [an earlier] case, and we have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect.").

Nor is there an executive-acquiescence doctrine for FOIA cases. At one time, for example, the National Security Council "routinely conceded its status as an 'agency' subject to the FOIA in litigation" and governed by the Federal Records Act (FRA). *Armstrong v. Executive Off. of the President (Armstrong II)*, 1 F.3d 1274, 1296 (D.C. Cir. 1993) (remanding for further determinations on this question). That was, in part, because the Department of Justice Office of Legal Counsel (OLC) said so in 1978. *See Armstrong v. Executive Off. of the President (Armstrong III)*, 90 F.3d 553, 557 (D.C. Cir. 1996). In 1993, during the Clinton Administration, OLC reversed its position and concluded that the NSC "does not have to comply with the FRA." *Id.* The D.C. Circuit agreed with OLC's new position, writing that just because the NSC in the past "voluntarily subjected certain of its records to the FOIA and the FRA[,] does not reflect any intention to concede, and should not be taken to establish as a matter of law, that the NSC is subject to those

11

statutes." *Id.* at 566. At no point did the D.C. Circuit suggest the Government irreversibly foreclosed its position on the NSC by acquiescing to FOIA requests—even though OLC's stance on the NSC was older in 1993 than the PRA's 60-day notice period is today.

### B.     The Fact that NARA Agrees Constructive Exhaustion Applies to Administrative Appeals Cuts In Favor of NARA, Not Against It

Plaintiffs complain that NARA's jurisdictional challenge does not cover Count 2 of Case No. 26-1214, which asserts constructive exhaustion over Plaintiffs' administrative appeal of a PRA request where NARA released *no* records. Opp. at 14. This is the classic case of refusing to take yes for an answer.

FOIA directs agencies to process administrative appeals within 20 working days. 5 U.S.C. § 552(a)(6)(A)(ii). If the agency fails to respond within that timeframe, FOIA constructively exhausts administrative remedies. *Id.* § 552(a)(6)(C)(i). The PRA imposes a 60-working-day notice period only if NARA plans to produce responsive records. *See* 44 U.S.C. § 2208(a)(1) (privilege review procedures trigger only "[w]hen the Archivist determines under this chapter to make available to the public any Presidential record that has not previously been made available to the public"). If nothing is being produced, there is no point in making a requester wait. Here, NARA was able to respond to one of Plaintiffs' FOIA requests by telling Plaintiffs there were no records responsive to Plaintiffs' request. *See* Compl. ¶ 40 (No. 26-1214).

NARA did not challenge Count 2 because when it comes to administrative appeals, there is no corresponding analogue of the 60-working-day notice period when responding to requests. The process under the PRA played out the way it would for any administrative appeal. Plaintiffs disagreed with NARA's determination that there were no responsive records. *Id.* ¶ 41. Plaintiffs appealed. *Id.* ¶ 43. NARA did not respond to that appeal within 20 working days, so

12

Plaintiffs sued. *Id.* ¶ 45. Had NARA produced records and given the President 60 days to review them, this appeal process would have unfolded the same way—just at a later date.

      **C.**      **Plaintiffs Improperly Analogize to Requests that NARA, by *Regulation*, Does Not Resolve Within 20 Days**

Plaintiffs complain that NARA has not raised similar jurisdictional challenges in situations where it, as a matter of internal housekeeping, does not resolve requests within 20 days. For example, NARA administratively classifies some cases as "complex," meaning that NARA internally estimates it cannot resolve them within 20 days. Opp. at 11-12 (citing 36 C.F.R. § 1250.26(g)). And since FOIA Exemption 4 allows NARA to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential," 5 U.S.C. § 552(b)(4), NARA provides the source of the information a 20-day notice period to object to disclosure—by regulation. Opp. at 15 (citing 36 C.F.R. § 1250.82(e)). Plaintiffs conclude that under NARA's view, NARA could also assert constructive exhaustion in those cases, and question why NARA has not done so.

These arguments are wide of the mark. NARA does not raise constructive exhaustion in those cases because an agency cannot supersede FOIA's text by regulation.[3] But FOIA is legislation, just like any other legislation. Thus, Congress can supersede FOIA's text by passing a new law—like the 2014 PRA amendments. *See* MTD at 8 (discussing the last-in-time rule and Congress' decision to bypass the OPEN FOIA Act, as recounted in *Everytown for Gun Safety Support Fund v. Bureau of ATF*, 984 F.3d 30, 34 (2d Cir. 2020)). In a brisk parenthetical, Plaintiffs speculate that the Exemption 4 argument might be relevant, because Congress might have also

---

[3] Plaintiffs also complain that NARA continues to reference the 2009 Obama EO in its regulations after Congress enacted the current statutory privilege review framework in 44 U.S.C. § 2208. Opp. at 12-13. The same response applies: a regulation cannot supplant the statutory text. True, NARA did not remove the reference to the Obama EO when amending that general area of the CFR in 2017. But that is, at worst, a clerical oversight that can be cleaned up at a later date.

delegated the procedure for "involving [trade secret] submitters" to the Executive Branch. *See* Opp. at 15. They do not back up this speculation with evidence. By contrast, NARA gathered drafting and legislative history showing that in enacting the PRA, Congress intentionally left privilege procedure to the Executive Branch. *See* MTD at 11-13, 16. And now, it does not do that. NARA regulations are not a convincing analogy to the Presidential Records *Act*.

### D.    NARA Did Not Permanently Acquiesce to Federal Court Jurisdiction by Continuing to Process Longstanding PRA Requests

Plaintiffs respond that NARA does not genuinely believe in its statutory interpretation argument since it has not moved to dismiss its pending PRA cases. Opp. at 1-4. That argument is not responsive. If Plaintiffs are upset that they are the first requesters to have to respond to this argument, that is because they rushed to the courthouse. Indeed, they filed Case No. 26-371 nine days after submitting an expedite request, which would be unlawful under even their theory of the case. *See* MTD at 5 n.2.[4]

More importantly, this argument ignores practical reality, as applying this argument to older cases would achieve little of substance. Of the five cases Plaintiffs cite in their introduction where the Government submitted filings not challenging jurisdiction after NARA moved for leave to file this Motion, three were filed in 2024 or earlier, and the fourth concerns two PRA requests from 2020 that NARA had already been processing for years before the lawsuit. *See* Compl. ¶ 6, *Gillon v. NARA*, No. 1:25-cv-2079 (D.D.C. filed June 30, 2025) (noting that NARA's compliance began in October 2020, over four years before litigation).

---

[4] Of the 11 post-2020 NARA lawsuits Plaintiffs cite, Opp. at 8-10, only 3 were filed within 9 months of the request. *See Judicial Watch v. NARA*, No. 22-3310 (D.D.C.) (5 months); *Legal Eagle v. NSC*, No. 20-1732 (D.D.C.) (4 months); *America First Legal Found. v. NARA*, No. 22-2713 (1 month). Two are basically done, and in the third, NARA finished document review several months before filing this Motion. *See* Joint Status Report ¶¶ 8-9, *Judicial Watch*, ECF 23 (Jan. 16, 2026).

Seeking dismissal of those pending PRA cases would serve little purpose. By April 29, 2026, when NARA announced its intent to move to dismiss, NARA had already performed the relevant searches for records in the other cases and had already assigned resources to processing the records on a cadence authorized by the district court. Many were winding up. *See* Joint Status Report at 2, *Cato Inst. v. NARA*, No. 1:22-cv-1746 (D.D.C. filed July 7, 2026), ECF 32 (noting that all non-classified records had already been processed, and federal agencies had already completed declassification reviews for the remaining records); Second Joint Status Report, *Gillon v. NARA*, No. 1:25-cv-2079 (D.D.C. filed June 8, 2026), ECF 18 (NARA was already in the process of releasing Al Gore vice presidential records); Joint Status Report, *National Sec. Archive v. NARA*, No. 1:24-cv-3300 (D.D.C. filed June 29, 2026), ECF 22 (NARA had already processed 383 of 435 pages); Status Report, *Southeastern Legal Found., Inc. v. NARA*, No. 1:23-cv-3819 (N.D. Ga. filed May 19, 2026), ECF 37 (NARA has been making rolling productions since February 2024). But moving to dismiss in *this* case allows both the parties and the Court to efficiently answer this threshold jurisdictional question at the outset of the case.

## CONCLUSION

For all the reasons stated above and in NARA's opening brief:

In Case No. 26-371, the Court should dismiss Counts 2, 4, 6, and 8-12.

In Case No. 26-847, the Court should dismiss the case.

In Case No. 26-920, the Court should dismiss Counts 1 and 2.[5]

In Case No. 26-1214, the Court should dismiss Counts 1 and 3-6.

---

[5] When this Motion was filed, Counts 1 and 2 were the only counts in Case No. 26-920. Plaintiffs have since amended their complaint to add Counts 3-6, which are not relevant to this Motion. Defendants plan to move to dismiss Counts 3-6 at a later date.

Dated: July 21, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Winston Shi*
JOHN BAILEY (OH Bar No. 104260)
Counsel to the Assistant Attorney General
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 880-0387
Email: winston.g.shi@usdoj.gov

*Counsel for NARA Defendants*