**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| LEGAL EAGLE, LLC, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 8:26-cv-00371 (TDC) |
| | * | Civil Action No. 8:26-cv-00847 (TDC) |
| NATIONAL ARCHIVES AND | * | Civil Action No. 8:26-cv-00920 (TDC) |
| RECORDS ADMINISTRATION, *et al.*, | * | Civil Action No. 8:26-cv-01214 (TDC) |
| | * | |
| Defendants. | * | |
| | * | |

*    *    *    *    *    *    *    *    *    *    *    *    *

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION**
**TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**


INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................2

I. FOIA'S CONSTRUCTIVE EXHAUSTION APPLIES TO PRA CASES ...3

A. PRA LITIGATION IN HISTORICAL CONTEXT ..........................3

B. AN OBVIOUS COMPARATOR FURTHER EXPOSES THE GOVERNMENT'S GAMESMANSHIP ..........................................9

C. NARA'S RATIONALIZATION IS NOT RATIONAL....................10

D. NARA MISUNDERSTANDS THE POINT OF CONSTRUCTIVE EXHAUSTION ....................................................................13

E. NARA'S INTERPRETATION IS PRACTICALLY UNWORKABLE ..................................................................16

F. NARA'S OBJECTION IS EFFECTIVELY MOOT .........................18

II. NARA'S STRAW MAN AGAINST FRA ENFORCEMENT IS THE WRONG STATUTE..........................................................................20

III. LEGAL EAGLE IS NOT REQUIRED TO ENGAGE IN FUTILE ACTIONS BEFORE REQUIRING DOJ AND FBI TO TRANSFER PRESIDENTIAL RECORDS ........................................................21

CONCLUSION..........................................................................................................22

**INTRODUCTION**

On 26 May 2026, Defendant National Archives and Records Administration ("NARA") filed a motion to dismiss most of the claims in these four Freedom of Information Act ("FOIA") cases, based on an unprecedented, ahistorical, and illogical interpretation of the Presidential Records Act ("PRA"). (Def.'s Mem. Supp. Part. Mot. Dismiss & J. on Pleadings, Dkt. #18-1, *passim* (filed May 26, 2026).)[1] The parties fully briefed that dispositive motion. After Plaintiffs Legal Eagle, LLC and National Security Counselors, Inc. (collectively "Legal Eagle")[2] filed the First Amended Complaint in Case No. 26-920, adding claims sounding in the Administrative Procedure Act ("APA") and mandamus, the Court denied NARA's dispositive motion as moot and ordered Defendants NARA, Department of Justice ("DOJ"), Bradford Wilson,[3] and Todd Blanche (collectively "the Government") to file a new dispositive motion.

Despite having the benefit of full briefing on the PRA question, demonstrating the weakness of NARA's argument, the Government filed a new dispositive motion on 16 September 2026 which largely regurgitates the frivolous arguments from the Government's first outing. (*See* Defs.' Mem. Supp. Part. Mot. Dismiss & J. on Pleadings, Dkt. #26-1, *passim* (filed Sept. 16, 2026) [Defs.' 2d Mem.].) Its addition of slightly more than a page of additional analysis on this point does nothing to save its argument, and in fact relies almost entirely on facts beyond the scope of the Court's review and a bare assertion devoid of any legal support. (*Id.* at 20-21.)

Regarding the new counts, NARA's attempt to argue against Counts 3-4 of Case No. 26-920 relies on a wholly inapposite straw man and fundamentally mischaracterizes the actual issue

---

[1] Unless otherwise specified, Legal Eagle uses the Docket Numbers from Case No. 26-371 herein.

[2] Even though there are two plaintiffs—Legal Eagle and the law firm representing it—they are referred to in the singular tense herein for the sake of convenience.

in controversy. (*Id.* at 21-28.) DOJ's attempt to argue against Counts 5-6 of that case similarly lacks any merit for a separate but related reason: it requires the Court to impose a requirement that a requester must file a futile request for Presidential records with an agency illegally holding onto them and which is not allowed to process Presidential records for release, *and have that request denied*, before it can ask a Court to compel the non-NARA agency to transfer the Presidential records in question to NARA. (*Id.* at 29.) It similarly asks the judge to hold that only NARA can request an injunction against the Federal Bureau of Investigation ("FBI") (*id.* at 30), even though NARA—as a non-independent Executive Branch agency—cannot legally seek an injunction against another Executive Branch agency.

In short, the Government's motion is without merit and should be summarily denied.

## **ARGUMENT**

For ease of reference, Legal Eagle will adopt the Government's nomenclature for the various cases: No. 26-371 (the John Bolton case), No. 26-847 (the OLC case), No. 26-920 (the Mar-a-Lago case, and No. 26-1214 (the ISCAP case). (*Id.* at 9.) While these names are not absolutely accurate, they will suffice for the purposes of this briefing, especially since the only case that needs to be identified with specificity is the Mar-a-Lago case.

Similarly, Legal Eagle will address arguments in roughly the order in which the Government raises them, without conceding that the arguments—or in fact, how they are framed—are appropriate. As noted above, the majority of Legal Eagle's argument regarding the PRA's interaction with FOIA remains unchanged from its first opposition brief, and Legal Eagle accordingly apologizes for the repetition.

---

[3] Bradford Wilson succeeded Edward Forst as the principal NARA officer on 7 August 2026.

## I. FOIA'S CONSTRUCTIVE EXHAUSTION APPLIES TO PRA CASES

### A. PRA LITIGATION IN HISTORICAL CONTEXT

In 2020, the Cato Institute submitted a FOIA request to the Ronald Reagan Presidential Library. Compl., Dkt. #1, ¶ 6 (filed June 17, 2022), *Cato Inst. v. NARA*, No. 22-1746 (D.D.C.). In June 2022, after NARA failed to release all responsive records, the requester filed a lawsuit under a theory of constructive exhaustion. *See id. passim*. Since that time, NARA has dutifully processed the responsive records, has provided interim releases, and has not claimed that the plaintiff filed its lawsuit prematurely or that the court lacked jurisdiction over the case because the PRA overrode FOIA's constructive exhaustion scheme. *See*, *e.g.*, J. Stat. Rep., Dkt. #31, at 2 (filed May 5, 2026), *Cato Inst. v. NARA*, No. 22-1746 (D.D.C.).

In 2020, Steve Gillon submitted two FOIA requests to the William J. Clinton Presidential Library. 1st J. Stat. Rep., Dkt. #14, at 3 (filed Dec. 5, 2025), *Gillon v. NARA*, No. 25-2079 (D.D.C.). In June 2025, after NARA failed to release all responsive records, the requester filed a lawsuit under a theory of constructive exhaustion. Compl., Dkt. #1, *passim* (filed June 30, 2025), *Gillon v. NARA*, No. 25-2079 (D.D.C.). Since that time, NARA has dutifully processed the responsive records, has provided an interim release,[4] and has not claimed that the plaintiff filed his lawsuit prematurely or that the court lacked jurisdiction over the case because the PRA overrode FOIA's constructive exhaustion scheme. *See*, *e.g.*, 2d J. Stat. Rep., Dkt. #18, at 1-4 (filed June 8, 2026), *Gillon v. NARA*, No. 25-2079 (D.D.C.) [hereinafter *Gillon* 2d JSR].

In 2023, the National Security Archive submitted a FOIA request to the George W. Bush Presidential Library. J. Stat. Rep., Dkt. #22, at 1 (filed June 29, 2026), *Nat'l Sec. Archive v. NARA*, No. 24-3300 (D.D.C.). In November 2024, after NARA failed to release all responsive

[4] The records were published online at https://www.archives.gov/presidential-records/vice-presidential-records/selected-vice-presidential-records/gore-records/2020-0040-f.

records, the requester filed a lawsuit under a theory of constructive exhaustion. *See* Compl., Dkt, #1, *passim* (filed Nov. 21, 2024), *Nat'l Sec. Archive v. NARA*, No. 24-3300 (D.D.C.). Since that time, NARA has dutifully processed the responsive records, has provided interim releases, and has not claimed that the plaintiff filed its lawsuit prematurely or that the court lacked jurisdiction over the case because the PRA overrode FOIA's constructive exhaustion scheme. *See*, *e.g.*, J. Stat. Rep., Dkt. #22, at 1-2 (filed June 29, 2026), *Nat'l Sec. Archive v. NARA*, No. 24-3300 (D.D.C.).

In 2022, the Southeastern Legal Foundation submitted a FOIA request to the Barack Obama Presidential Library. Stat. Rep., Dkt. #37, at 1 (filed May 19, 2026), *SE Legal Found., Inc. v. NARA*, No. 23-3819 (N.D. Ga.) [hereinafter *SE Legal* SR]. In August 2023, after NARA failed to release all responsive records, the requester filed a lawsuit under a theory of constructive exhaustion. *See* Compl., Dkt, #1, *passim* (filed Aug. 28, 2023), *SE Legal Found., Inc. v. NARA*, No. 23-3819 (N.D. Ga.). Since that time, NARA has dutifully processed the responsive records, has provided interim releases, and has not claimed that the plaintiff filed its lawsuit prematurely or that the court lacked jurisdiction over the case because the PRA overrode FOIA's constructive exhaustion scheme. *See*, *e.g.*, *SE Legal* SR at 2-3.

Compared to the above recitation, NARA's conduct in this case is a remarkable deviation from its historical practice. In fact, it does not even represent the current legal position of its attorneys in the Federal Programs Branch of the Department of Justice Civil Division. Since the Federal Programs Branch attorneys representing NARA first announced their intent to file this Motion on 29 April 2026 (Not. of Intent to File Part. Mot. Dismiss / Mot. J. on Pleadings, Dkt. #27, *passim* (filed Apr. 29, 2026), No. 26-920), Federal Programs Branch attorneys representing NARA have filed status reports in two other preexisting cases detailing how the agency is

diligently processing Presidential records and fully participating in the litigation, with no mention of any objection to the constructive exhaustion theory on which those plaintiffs relied. *See* J. Stat. Rep., Dkt. #31 (filed May 5, 2026), *Cato Inst. v. NARA*, No. 22-1746 (D.D.C.) (signed by James Bickford and Elizabeth Shapiro of the Federal Programs Branch and Brett Shumate of the Civil Division); *SE Legal* SR (signed by Jacob Siler and Elizabeth Shapiro of the Federal Programs Branch and Brett Shumate of the Civil Division). Furthermore, less than a week before NARA's counsel first raised this objection with the undersigned on 17 March 2026, Federal Programs Branch attorneys filed a motion in a third case in which they raised PRA notice-based objections to a court-ordered production schedule, yet made no mention of any objection to the constructive exhaustion theory on which the plaintiff relied. *See* Unopposed Mot. Clarify, Dkt. #26 (filed Mar. 11, 2026), *Judicial Watch, Inc. v. NARA*, No. 22-3310 (D.D.C.) (signed by Kevin Bell and Elizabeth Shapiro of the Federal Programs Branch and Brett Shumate of the Civil Division).[5]

Furthermore, no published opinion has ever even *hinted* that a lawsuit for Presidential records filed under a constructive exhaustion theory *might* be premature. *See*, *e.g.*, *Smith v. NARA*, 415 F. Supp. 3d 85 (D.D.C. 2019); *Judicial Watch, Inc. v. NARA*, 845 F. Supp. 2d 288 (D.D.C. 2012); *Judicial Watch, Inc. v. NARA*, No. 07-1987, 2008 U.S. Dist. LEXIS 141855 (D.D.C. Sept. 30, 2008); *Judicial Watch, Inc. v. NARA*, No. 07-1297, 2008 U.S. Dist. LEXIS 141853, at *1-2 (D.D.C. May 20, 2008), Order on Pls.' Mot. for Award of Att'ys' Fees & Costs, Dkt. #49 (filed Sept. 1, 2006), *Cooke v. Ronald Reagan Presidential Lib.*, No. 05-6518 (C.D. Cal.).

---

[5] It bears noting that NARA's argument in the instant cases heavily cites Congress's thoughtful, legitimate, and proper enactment of the PRA, while the Government—represented again by the Federal Programs Branch—is arguing elsewhere that the PRA is unconstitutional and never

In fact, the undersigned was unable to identify a single *brief* even suggesting such a thing. He surveyed FOIA litigators and former NARA personnel and could not identify a preexisting case in which this argument was made. He reviewed the case files on FOIAProject.org for every lawsuit filed since 2020 in which NARA was a party, and he could not identify a *single case* where a person filed a request for Presidential records and then filed suit before the production was complete in which NARA's response was *anything* besides calmly processing the responsive records and concluding the lawsuit. The results of his research are as follows:

- *Legal Eagle, LLC v. Nat'l Sec. Council Recs. Access & Info. Mgmt. Directorate*, No: 20-1732 (D.D.C.): Case concluded without motion to dismiss. J. Stat. Rep., Dkt. #49 (filed Aug. 5, 2022), *Legal Eagle, LLC v. Nat'l Sec. Council Recs. Access & Info. Mgmt. Directorate*, No. 20-1732 (D.D.C.);
- *Cato Inst. v. NARA*, No. 22-1746 (D.D.C.): Case in process without motion to dismiss. J. Stat. Rep., Dkt. #31 (filed May 5, 2026), *Cato Inst. v. NARA*, No. 22-1746 (D.D.C.);
- *Cato Inst. v. NARA*, No. 22-2064 (D.D.C.): Case concluded without motion to dismiss. J. Stip. of Dismissal with Prej., Dkt. #13 (filed Dec. 19, 2022), *Cato Inst. v. NARA*, No. 22-2064 (D.D.C.);
- *Am. First Legal Found. v. NARA*, 22-2713 (D.D.C.): Case concluded without motion to dismiss. J. Stat. Rep., Dkt. #38 (filed June 10, 2026), *Am. First Legal Found. v. NARA*, No. 22-2713 (D.D.C.);

---

should have been passed. *See Am. Hist. Ass'n v. Trump*, No. 26-1169, 2026 U.S. Dist. LEXIS 111940 (D.D.C. May 20, 2026).

- *Judicial Watch, Inc. v. NARA*, No. 22-3310 (D.D.C.): Case in process without motion to dismiss. Order, Dkt. #28 (filed May 29, 2026), *Judicial Watch, Inc. v. NARA*, No. 22-3310 (D.D.C.);
- *Milliron v. NARA*, No. 23-1222 (W.D. Mich.): Case concluded without motion to dismiss. Stip. Order Dismissing Defs. NARA & DHS, Dkt. #52 (filed Jan. 13, 2025), *Milliron v. NARA*, No. 23-1222 (W.D. Mich.);
- *SE Legal Found., Inc. v. NARA*, No. 23-3819 (N.D. Ga.): Case in process without motion to dismiss. Stat. Rep., Dkt. #37 (filed May 19, 2026), *SE Legal Found., Inc. v. NARA*, No. 23-3819 (N.D. Ga.);
- *Am. First Legal Found. v. NARA*, No. 23-829 (D.D.C.): Case concluded without motion to dismiss. J. Stat. Rep., Dkt. #16 (filed Sept. 6, 2024), *Am. First Legal Found. v. NARA*, No. 23-829 (D.D.C.);
- *Ctr. to Advance Sec. in Am. v. NARA*, No. 24-3083 (D.D.C.): Case in process without motion to dismiss. J. Stat. Rep., Dkt. #17 (filed May 14, 2026), *Ctr. to Advance Sec. in Am. v. NARA*, No. 24-3083 (D.D.C.);
- *Nat'l Sec. Archive v. NARA*, No. 24-3300 (D.D.C.): Case in process without motion to dismiss. J. Stat. Rep., Dkt. #22 (filed June 29, 2026), *Nat'l Sec. Archive v. NARA*, No. 24-3300 (D.D.C.); and
- *Gillon v. NARA*, No. 25-2079 (D.D.C.): Case in process without motion to dismiss. *Gillon* 2d JSR.

Eleven cases against NARA for Presidential records, each brought under a theory of constructive exhaustion. Eleven cases where NARA properly responded to the cases and conceded the court's jurisdiction and the plaintiffs' reliance on constructive exhaustion. As

NARA correctly explains, "In separation-of-powers cases [the Supreme] Court has often 'put significant weight upon historical practice.'" (Defs.' 2d Mem. at 17 (quoting *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 23 (2015)).)[6] NARA's historical practice has been to recognize that FOIA's constructive exhaustion provision applies to requests for Presidential records.

In fact, NARA's conduct at the administrative level further demonstrates its longstanding recognition of the applicability of FOIA's deadline. On 18 February, the Trump Library acknowledged Request No. 26-19620-F and formally invoked "unusual circumstances" to give itself an additional ten business days to respond. (Compl., Dkt. #1, ¶ 34 (filed Mar. 5, 2026), No. 26-920.) In that letter, it stated:

> Your request falls within one of the "unusual circumstances" categories contemplated by the FOIA, 5 U.S.C. §552(a)(6)(B)(iii) (I), (II) and (III), and we need additional time to respond to your request *beyond the twenty business days provided by the FOIA statute*. We regret the necessity of this delay but assure you that your request will be processed as soon as possible. In accordance with 5 U.S.C. §552(a)(6)(B)(i) the request will take an additional 10 working days from the date of this letter.

Ltr. from Butler to McClanahan of 2/18/26 (emphasis added), attached as Ex. 1, J.R. 1-2.[7] Not only did NARA formally invoke FOIA's language regarding deadlines, it explicitly conceded that the agency's deadline was "provided by the FOIA statute." Now that the case is in litigation, NARA asks this Court to find that "the only plausible reading is that [FOIA's deadline] does not

---

[6] Legal Eagle does not necessarily agree that this is a separation-of-powers case, and NARA has not made an argument that it is, beyond this citation. Legal Eagle merely points out that even applying NARA's logic, its argument fails.

[7] Because NARA cites both Rules 12(b)(1) and 12(c), while quoting the standard for a Rule 12(b)(6) motion, and does not explain how these rules apply to this case, it is unclear which rules apply to which arguments. However, since, even assuming the more stringent Rule 12(b)(6) evidentiary standards, FOIA correspondence would be considered integral to the complaint, the Court can consider it. *Accord Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

apply to the PRA" (Defs.' 2d Mem. at 21), while its own official correspondence concedes that FOIA's deadline applies to a PRA request to NARA.

### B. AN OBVIOUS COMPARATOR FURTHER EXPOSES THE GOVERNMENT'S GAMESMANSHIP

While the above discussion demonstrates how NARA has taken an extreme position in these cases in contrast to preexisting cases, the most glaring example of the Government's gamesmanship before this Court can be found in a case filed *after* these cases, also for records of the first Trump Administration. Even if one were to assume *arguendo* that NARA and DOJ simply changed their minds this year about the ability of a requester to file a lawsuit under a constructive exhaustion theory for Presidential records, they would be expected to take that position in any future case. But they have not.

On 24 July 2026, three days after NARA filed its reply in support of dismissal in these cases, a representative of the media named Christopher McDaniel ("McDaniel") filed a lawsuit in the D.C. District Court for records of the first Trump Administration. Compl., Dkt. #1, *passim* (filed July 24, 2026) [hereinafter *McDaniel* Compl.], *McDaniel v. NARA*, No. 26-2619 (D.D.C.) [hereinafter *McDaniel*].

NARA's response to this complaint was due 2 October 2026. One would expect NARA to file a motion to dismiss, citing all of the arguments it cites in Legal Eagle's cases. Instead, it filed an Answer. Ans., Dkt. #6, *passim* (filed Oct. 2, 2026) [hereinafter *McDaniel* Ans.], *McDaniel.* Critically, in response to two directly on-point allegations in the complaint, NARA made no objection. First, McDaniel stated, "Plaintiff has or is deemed to have exhausted applicable administrative remedies with request to the Requests." *McDaniel* Compl. ¶ 39. Second, McDaniel stated, "Plaintiff has or is deemed to have exhausted applicable administrative remedies with request to the Appeal." *Id.* ¶ 53. NARA's response to each allegation was simply:

"This paragraph consists of Plaintiff's conclusions of law, not factual allegations to which a response is required." *McDaniel* Ans. ¶¶ 39, 53. This non-response is far removed from the impassioned assertion of "the only plausible reading" (Defs.' 2d Mem. at 21) present in the instant cases.

However, the most incriminating language does not appear until the end of NARA's Answer. After asserting five separate defenses to the complaint, NARA states, "NARA has exercised due diligence in processing Plaintiff's FOIA requests, *and exceptional circumstances exist necessitating additional time for NARA to continue its processing of Plaintiff's FOIA request.* See *§ 552(a)(6)(C)*." *McDaniel* Ans. at 7 (emphasis added). In other words, NARA affirmatively claims in *McDaniel* the very remedy—which was explained in Legal Eagle's first opposition and is again explained below—that it stubbornly persists in arguing is inapplicable before *this* Court.

The lesson from *McDaniel* is obvious. For unknown reasons, NARA and DOJ chose to press an unprecedented and ahistorical interpretation of the PRA and FOIA before this Court *and only this Court*, while continuing its standard practice of participating in such cases in good faith in *literally every other case*. It is tempting to speculate about the underlying motivations for such rank gamesmanship and hypocrisy, but in the final analysis this Court does not need to know *why* NARA and DOJ took such a radically different tack in these cases; it only needs to recognize that they *did* and that their argument is not made in good faith.

**C. NARA'S RATIONALIZATION IS NOT RATIONAL**

Even if one ignores the ahistorical aspect of NARA's argument, the reasons it gives for the alleged problem it seeks to solve simply do not reflect the facts or the law. According to NARA's argument, the need to provide notice to former and incumbent presidents is what makes

it impossible for the agency to adhere to FOIA's twenty-business-day deadline, and therefore it would be unfair to allow a requester to pull it into court for missing that deadline, forcing it "to choose between the President's notice period and administrative exhaustion." (Defs.' 2d Mem. at 11.) This line of argument boils down to a legal fiction that, but for the notice period, NARA would be able to process requests within twenty business days. But NARA's own published regulations give the lie to that contention:

> NARA places FOIA requests in simple or complex processing queues to be processed in the order received, on a first-in, first-out basis. In most cases, we make a determination about release of the records you requested within 20 working days from when the appropriate office receives your request (simple queue processing). However, if complexity or unusual circumstances prevent NARA from making a decision within 20 working days, we place your request into a complex processing queue. . . . *We place into a complex processing queue any request that cannot be completed within 20 working days*.

36 C.F.R. § 1250.26(f)-(g) (emphasis added). In other words, NARA formally defines its *entire complex queue* as requests that *cannot be completed* by the deadline. According to NARA's argument in these cases, that should mean that no person who files a complex request can file a lawsuit under the theory of constructive exhaustion, because it would be impossible for NARA to meet the deadline.

However, in anticipation of NARA's argument that it is not arguing that complex requests cannot be constructively exhausted, only requests for Presidential records, the rest of this regulation explains how NARA has *always* considered requests for Presidential records to be no different than any other "request that cannot be completed within 20 working days." "We place into a complex processing queue any request that cannot be completed within 20 working days due to complexity, volume, because it contains national security information, *because it involves Presidential or Vice Presidential records*, or involves unusual circumstances." 36 C.F.R. § 1250.26(g) (emphasis added). On this specific point, NARA further explains,

"Although we send you an initial status response to your FOIA request within 20 working days in these cases, the final response to your FOIA request will take longer. We can provide the final response only at the end of the Presidential notification period set forth in the Executive order." 36 C.F.R. § 1250.26(j).

NARA asks this Court to conclude that Congress intentionally changed the legal landscape when it added 44 U.S.C. § 2208 in November 2014, "codifying" the distinction between the PRA and FOIA. (Defs.' 2d Mem. at 17-18.) However, when NARA amended the above regulation in 2017, it preserved the incorporation of "the applicable Executive order on implementation of the PRA" from the September 2014 version and did not reference 44 U.S.C. § 2208. 36 C.F.R. § 1250.26(j). Contrary to NARA's position in this case, NARA's observation that it "amended the PRA regulation after Section 2208 was enacted, but not the statement that NARA could not respond to a PRA request until it completed the presidential notification period first" (Defs.' 2d Mem. at 6) only demonstrates that NARA was so unconcerned with the statutory change that it did not even *mention* it when it amended the implementing regulation three years later.

When Congress passed the PRA, it incorporated FOIA as a "procedural vehicle" for requesting presidential records." (*Id.* at 11.) It did not quietly exclude the only part of FOIA that allows timely judicial review and put nothing else in its place. "Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Congress knew this in 1978. The General Services Administration knew this in 1978. Neither did Congress override FOIA when it amended the PRA. Congress knew this in 2014. NARA knew this in 2014. This is why none of the legislative history quoted by NARA

actually refers to FOIA's constructive exhaustion provision. And, as shown above, NARA and its counsel know this in 2026 as well, in *other* cases. They are just pretending not to know it in *these* cases because that knowledge is now inconvenient.

### D. NARA MISUNDERSTANDS THE POINT OF CONSTRUCTIVE EXHAUSTION

NARA argues, "FOIA's constructive-exhaustion rule impels agencies to process requests faster." (Def.'s 2d Mem. at 21.) According to NARA, applying it to requests for Presidential records would "forc[e] NARA to choose between the President's notice period and administrative exhaustion" (*id.* at 7) and "would cut an ugly gash through the deliberative process Congress established in the PRA" (*id.* at 17). However, as decades of FOIA opinions reveal, the constructive exhaustion rule does not impel agencies to process requests faster. Agencies which do not issue a final response within twenty business days are not required to release all responsive records. As this Circuit explained it:

> [T]o prevent agencies from keeping requesters out of court by simply delaying the administrative process *ad infinitum*, Congress provided that a requester will be deemed to have exhausted his or her administrative remedies "if the agency fails to comply with the applicable time limit provisions" laid out in FOIA. Put simply, if an agency does not respond to a request within twenty working days after receiving it, the requester may typically commence litigation. This court has flatly stated that even if a request "may have been burdensome to the agency or would have to be delayed because of other requests filed earlier," the constructive exhaustion provision still applies.

*Coleman v. DEA*, 714 F.3d 816, 823 (4th Cir. 2013) (citing *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013) [hereinafter *CREW*], & *Pollack v. DOJ*, 49 F.3d 115, 119 (4th Cir. 1995)).

The D.C. Circuit further explained that the only "penalty" an agency faces when it does not issue a final response within twenty working days "is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *CREW*, 711 F.3d at

189. "This scheme provides an incentive for agencies to move quickly but recognizes that agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement." *Id.* That court further explained that those agencies which find themselves pulled into court due to constructive exhaustion would nonetheless benefit from a statutory safety valve in the form of the "exceptional circumstances" provision:

> [T]he statute provides that, once in court, an agency may further extend its response time by means of the "exceptional circumstances" safety valve. That provision says that if exceptional circumstances exist and an agency "is exercising due diligence in responding to the request," a court may grant the agency "additional time to *complete its review* of the records." 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added). Like the unusual circumstances provision, the exceptional circumstances provision presumes that an agency operating outside the 20-working-day window needs more time to finish gathering and reviewing documents, and more time to decide what to produce and to withhold.

*Id.* at 188.

The D.C. Circuit's final conclusion, endorsed by this Circuit in *Coleman* and its progeny, is entirely fatal to NARA's argument. It held:

> We are intimately familiar with the difficulty that FOIA requests pose for executive and independent agencies. But contrary to the FEC's suggestion, our reading of the statute recognizes and accommodates that reality. As our opinion today emphasizes, the 20-working-day period (actually 30 working days with the unusual circumstances provision) is the relevant timeline that the agency must adhere to if it wants to trigger the exhaustion requirement before suit can be filed. The unusual circumstances and exceptional circumstances provisions allow agencies to deal with broad, time-consuming requests (or justifiable agency backlogs) and to take longer than 20 working days to do so. To reiterate, if the agency does not adhere to FOIA's explicit timelines, the "penalty" is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court.

*Id.* at 189-90. In fact, this Circuit effectively precluded NARA's argument almost twenty years *earlier*, when it explained that the entire point of the exceptional circumstances provision was to assist agencies which could not comply with the statutory deadline for *any* justifiable reason:

> That the request may have been burdensome to the agency or would have to be delayed because of other requests filed earlier does not allow the agency to circumvent the constructive exhaustion provision. Rather, once an agency fails to respond timely to a request, FOIA permits the requester immediately to file an enforcement suit and authorizes the district court to "retain jurisdiction and allow the agency additional time to complete its review of the records," assuming that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."

*Pollack*, 49 F.3d at 119. *This* is the statutory safety valve that NARA cited as an affirmative defense in *McDaniel*, and which it argues herein is not sufficient.

Simply put, Congress recognized that agencies may not be able to meet the statutory deadline for entirely legitimate reasons, and it wrote a solution into the FOIA statute. Courts regularly exercise this authority without objection or comment, and none question whether FOIA's constructive exhaustion provision *was legal*. Until this case, agencies—including Presidential Libraries—did what the law required: they *asked the Court for more time*. *See*, *e.g.*, *Judicial Watch, Inc. v. NARA*, No. 07-1987, 2008 U.S. Dist. LEXIS 141855, at *9-11 (D.D.C. Sept. 30, 2008) (granting stay requested by Clinton Presidential Library); *Judicial Watch, Inc. v. NARA*, No. 07-1297, 2008 U.S. Dist. LEXIS 141853, at *1-2 (D.D.C. May 20, 2008) (same). This type of stay is so common it even has a name: *Open America* (named after *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976)). *Accord Pollack*, 49 F.3d at 117 (citing *Open Am.*). *That* is what NARA should have done here: demonstrate that it is exercising due diligence in processing Legal Eagle's requests—mentioning the mandatory notification period—as it did in the *Gillon* 2d JSR and the *SE Legal* SR—and ask the Court to allow it to continue processing the responsive records, as it effectively did in the *McDaniel* Answer. Instead, it chose to file a frivolous Motion and waste the Court's time while

simultaneously demonstrating its lack of conviction in its own position in all the other cases running concurrently.[8]

## E. NARA'S INTERPRETATION IS PRACTICALLY UNWORKABLE

Even if one assumes *arguendo* that there is some ambiguity in the interplay between the PRA notice provision and FOIA's constructive exhaustion provision—which there is not—NARA's solution is unworkable in a practical sense as well. For instance, NARA need only provide notice to former and incumbent presidents if it intends to release information. Does this mean that a requester can sue under constructive exhaustion if NARA does not intend to release information? Also, FOIA has a six-year statute of limitations which runs from the day after the twentieth business day, and a requester simply cannot bring a lawsuit under *actual* exhaustion if he waits for the agency to issue a final response, if that final response is issued more than six years after that date. If FOIA is the mechanism for requesters to get judicial review of NARA's response to a request for Presidential records, can a requester bring a lawsuit after NARA's final response, ten years later? What *is* the statute of limitations for a FOIA case involving Presidential records, and when does it start to run? And in what mousehole did Congress allegedly hide that information?[9]

---

[8] It is further evidence of gamesmanship that NARA cites to an outside-the-record letter written on 23 July 2026 for the contention that it is diligently processing Legal Eagle's requests (*see* Defs.' 2d Mem. at 8), while failing to explain why NARA commits in that letter to releasing records by 19 October 2026 while stating in its brief that it will not release them until a week later, after Legal Eagle has filed this Opposition. (*Compare* Ltr. from McClure to Warrington at 1 (July 23, 2026), *available at* https://archives.gov/files/foia/pra-notifications/pdf/trump45/rn-pldjt-2026-099.pdf (last accessed Oct. 22, 2026), *with* Defs.' 2d Mem. at 8.) The undersigned has asked Defendants' counsel to explain this discrepancy and has not received a response.

[9] NARA's response to this line of inquiry is to argue that a requester could file a lawsuit under the APA to force access to Presidential records (Defs.' 2d Mem. at 20), even though it concedes that FOIA is "the procedural vehicle" for the PRA (*id.* at 11), which necessarily means that an APA lawsuit would fail because FOIA provides an "adequate remedy." 5 U.S.C. § 704. This inexplicable assertion is further exacerbated by the contention that Legal Eagle is filing such a

These are just examples of the problems with NARA's argument. But NARA's argument itself is internally inconsistent. It admits that Count 2 of the ISCAP case is not covered by this Motion (*see* Defs.' 2d Mem. at 10), but it gives no reason *why* that count should be excluded. In that count, NARA identified no records, Legal Eagle appealed that determination, NARA did not resolve the appeal within twenty business days, and Legal Eagle filed the lawsuit. According to NARA's logic, the chance that NARA might reverse the initial determination on appeal and later identify records about which it might need to notify former and incumbent presidents would mean that constructive exhaustion does not apply, but it does not *make* that argument. Instead, constructive exhaustion is apparently fine as long as the notice happens after an administrative appeal. Even in the absence of all the other examples of NARA's historical practice, this fact is enough to show the weakness of its argument.

In contrast to NARA's argument, which would upend decades of understood law and practice and leave numerous unanswered questions in its wake, requiring yet more litigation down the road, Legal Eagle maintains that the Court should treat this case as NARA and other courts have treated all the other FOIA cases for Presidential records. Moreover, there is a suitable analogue which lends itself to this analysis: litigation over invocations of FOIA Exemption (b)(4).

It has been well-understood for decades that an agency may invoke Exemption (b)(4) to withhold information provided to the agency by a commercial entity which might cause competitive harm to the submitter. Each agency has published a regulation establishing the manner in which it involves the submitter in this process. 36 C.F.R. § 1250.82 fulfills this role for NARA. According to that regulation, "We provide the submitter with 20 working days from

---

claim in these cases (*see* Defs.' 2d Mem. at 20 ("Plaintiffs could file an APA withholding claim—*like the one they filed here*.") (emphasis added)), when Legal Eagle's APA claims in this

the date of NARA's notice to object to the release and to explain a basis for the objection, including justification and support for the claim. The NARA FOIA Officer may extend this period as appropriate." 36 C.F.R. § 1250.82(e). Due to this congressionally-blessed notice period created because "Congress expected the Executive Branch to establish the procedure for [involving submitters]" (Defs.' 2d Mem. at 15), it is literally *impossible* for NARA to respond within twenty business days to *any* FOIA request for commercial records. This is directly comparable to the pre-2014 period, in which, at least according to NARA, Congress implicitly left it up to the Executive Branch to decide when FOIA requesters seeking Presidential records could file a lawsuit. And yet nobody ever questioned whether a requester seeking information potentially exempt under Exemption (b)(4) could file a lawsuit after twenty business days. In theory, a requester could even file a lawsuit in the middle of a "reverse FOIA" lawsuit brought by a commercial submitter to enjoin the release of records, despite the fact that the agency would not be able to respond within twenty business days due to ongoing litigation.

**F. NARA'S OBJECTION IS EFFECTIVELY MOOT**

The only thing for certain about NARA's argument is the contention that Legal Eagle filed its lawsuits prematurely. NARA leaves it to the Court to guess, however, when Legal Eagle *could* have filed these lawsuits. Does NARA maintain that Legal Eagle cannot litigate its response to a request until NARA has finished processing every responsive record and the former and incumbent presidents have made their final positions known and any litigation on that question has been exhausted up to and including a Supreme Court decision, even if that might take multiple decades? If so, this Circuit already decided that question when it stated that agencies could not "keep[] requesters out of court by simply delaying the administrative process *ad infinitum*." *Coleman*, 714 F.3d at 823.

---

case are not withholding claims and would result in no information being disclosed to them.

However, if NARA simply quibbles with the *duration* of the constructive exhaustion period, its argument has been rendered effectively moot by the passage of time. Assume, for example, that NARA concedes that *it* must complete *its* review and provide any applicable notice to former and incumbent presidents within twenty or thirty business days, and that a requester can then file a lawsuit at the end of the 60-day—extendable to 90-day—notice period. After all, NARA states (without support) that "constructive exhaustion under FOIA occurs only if the agency breaches an applicable deadline" (Defs.' 2d Mem. at 1), and the only potentially "applicable deadlines" would be FOIA's 20/30-day deadline[10] and the PRA's 60/90-day deadline. In that case, Legal Eagle would have been able to file these lawsuits on 29 May, or at the latest 14 July.[11] Using either a 60- or 90-day notice period, then, Legal Eagle could simply file amended complaints *now* which would satisfy NARA's interpretation (and, in fact, Legal Eagle *did* file an amended complaint in the Mar-a-Lago case on 8 July, which renders NARA's Motion moot as far as that case is concerned, since President Trump did not extend the 60-day period). This Motion can have no meaningful effect on the litigation, since NARA has given no reason for the Court to dismiss the cases *with prejudice*. It is clear that the only purpose of this Motion is delay. In the interest of covering all its bases, Legal Eagle hereby notifies the Court that if so required, it will file amended complaints in the remaining three cases to resolve this issue.

---

[10] Agencies may unilaterally grant themselves an additional ten business days by claiming unusual circumstances. 5 U.S.C. § 552(a)(6)(B)(i).

[11] Since NARA invoked unusual circumstances to claim an additional ten business days for the request at issue in Count 1 of the Mar-a-Lago case (1st Am. Compl., Dkt. #54, ¶ 45 (filed July 8, 2026), *Legal Eagle v. NARA*, No. 26-920 (D. Md.)), adding sixty more business days to that deadline would move the deadline to 28 May, and adding thirty more business days to that would move the deadline to 13 July. The remainder of the requests would be eligible for litigation ten business days before those dates, since NARA did not timely claim unusual circumstances for them.

As NARA stated, "courts 'hesitate to adopt an interpretation that would eviscerate such significant aspects of the statutory text.'" (Defs.' 2d Mem. at 11 (quoting *American Hosp. Ass'n v. Becerra*, 596 U.S. 724, 737 (2022)).) And yet NARA tells this Court that "[t]he only plausible reading" (*id.* at 21) of an amendment to the PRA which makes no mention of FOIA is to eviscerate the entire judicial review scheme established by that statute and let the agency take as long as it wants to take to process requests for Presidential records without any judicial oversight. This reading is irreconcilable with the statutory language, the legislative history, the controlling case law, the historical practice, and basic common sense. The Court should definitively reject this spurious argument.

## II. NARA'S STRAW MAN AGAINST FRA ENFORCEMENT IS THE WRONG STATUTE

Legal Eagle filed two counts seeking APA and/or mandamus relief in response to NARA's refusal to take appropriate measures to recover records unlawfully "returned" to the Mar-a-Lago Club. Both of those counts cited the mandatory language from the Federal Records Act ("FRA"), *not* the permissive language from the PRA. (1st Am. Compl., Dkt. #54, ¶¶ 52-65 (filed July 8, 2026), *Legal Eagle v. NARA*, No. 26-920 (D. Md.).) These counts sought enforcement of a letter written on 22 April 2026, which specified that Legal Eagle was concerned about both "[t]he 'return' of Presidential records covered by the PRA . . . as [well as] the transfer of federal records covered by the FRA out of government custody." (*Id.* ¶ 35.) Legal Eagle's letter continued: "The DOJ and FBI copies of these records were agency records covered by the FRA. Therefore this 'return' of records violated both statutes if copies were not retained by DOJ and/or FBI, which, from all reporting, they were not." (*Id.*)

Despite the fact that Legal Eagle clearly seeks to enforce the *FRA*, DOJ spends almost a third of its brief attacking a straw man: the baseless contention that Legal Eagle is invoking the

permissive language of the PRA. DOJ is unfortunately correct that, under the PRA, Legal Eagle cannot compel NARA to recover Presidential records that have been unlawfully transferred out of the Government's custody. Legal Eagle is not *trying* to do so; it is trying to compel NARA to seek the Attorney General's assistance in recovering *agency records*. Specifically, Counts 3-4 of the Mar-a-Lago case pertain solely to DOJ and FBI copies of the records recovered from the Mar-a-Lago Club which, from all evidence, have been removed from the Government's custody. As such, DOJ's Motion is entirely irrelevant, and the Court cannot dismiss those counts.

## III. LEGAL EAGLE IS NOT REQUIRED TO ENGAGE IN FUTILE ACTIONS BEFORE REQUIRING DOJ AND FBI TO TRANSFER PRESIDENTIAL RECORDS

At the end of its brief, the Government makes one of its most perplexing arguments. DOJ argues that Legal Eagle cannot sue to force FBI to return Presidential records to NARA because it cannot show that FBI would not process a FOIA request for those Presidential records. (Defs.' 2d Mem. at 28-29.) This argument is cut from whole cloth and is legally nonsensical. No agency besides NARA can legally process Presidential records for release. If FBI received a request for Presidential—or personal—records in its custody, it would legally be *unable* to process them for release because they are *not agency records*, and FOIA only applies to agency records. A party is not required to exhaust an administrative process if the process would be futile. *Atlantic Richfield Co. v. DOE*, 769 F.2d 771, 782 (D.C. Cir. 1984).

In anticipation of the Government's argument that Legal Eagle is stating in Counts 3-4 that the records in question are agency records and stating in Counts 5-6 that they are not, the two arguments pertain to different records, although there may admittedly be some overlap. Counts 3-4 pertain to *agency copies* of Presidential records, while Counts 5-6 pertain to the Presidential records themselves. There is no way at this point in the case to know how many

Presidential records DOJ and FBI have in their custody, how many copies of Presidential records they have in their custody, or even if the agency copies they still have are of the Presidential records they still have. These two arguments are complementary, while still each pertaining to mutually exclusive collections of records.

DOJ's final argument fares no better. It attempts in six sentences to argue that Legal Eagle cannot sue FBI to require it to return Presidential records to NARA because that would be "an injunction that NARA itself has not requested." (Defs.' 2d Mem. at 30.) This unsupported argument ignores a basic governmental reality: one non-independent Executive Branch agency cannot sue another one. The PRA judicial enforcement mechanisms can only be employed *outside* the Government, not by NARA against DOJ. On the contrary, *only* an outside party can compel one agency to return records to another one, if the failure to do so is causing them an informational injury. Legal Eagle has sufficiently pleaded such an injury, and the Court cannot dismiss these counts based on DOJ's conclusory allegations to the contrary.

## CONCLUSION

The Government's Motion lacks any merit and cannot demonstrate that any portion of Legal Eagle's complaint is legally non-justiciable. As a result, the Court should deny the Motion in its entirety.

Date: October 23, 2026

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
MD Bar #31832
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD 20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*