**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

LEGAL EAGLE, LLC, *et al.*,

Plaintiffs,

v.

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, *et al.*,

Defendants.

No. 8:26-cv-371-TDC
No. 8:26-cv-847-TDC
No. 8:26-cv-920-TDC
No. 8:26-cv-1214-TDC

**REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

I. The Court Lacks Jurisdiction Over Plaintiffs' Records-Denial Claims............................ 2

A. An *Open America* Stay Cannot Salvage Plaintiffs' PRA Claims .......................... 2

1. *Open America* Provides a Different Solution to a Different Problem ........ 2

2. Plaintiffs Identify Only Two *Open America* Stays in PRA Cases in Fifty Years, Which Have Little Resemblance to Today's Case ................ 4

3. Plaintiffs' Argument Is Policy All the Way Down—And It Is Wrong....... 5

B. Plaintiffs' Adverse-Possession Jurisdictional Theory Lacks Merit ........................ 7

1. There Is No Statute of Limitations, Waiver, or Acquiescence Defense to Jurisdictional Arguments ..................................................................... 7

2. The Fact that NARA Agrees Constructive Exhaustion Applies to Administrative Appeals Cuts In Favor of NARA, Not Against It............. 8

3. Plaintiffs Improperly Analogize to Requests that NARA, by *Regulation*, Does Not Resolve Within 20 Days......................................... 9

4. NARA Did Not Permanently Acquiesce to Federal Court Jurisdiction by Continuing to Process Longstanding PRA Requests ........................... 10

II. Plaintiffs May Not Sue NARA For the Loss of Either Presidential or Federal Records (Counts 3-4, No. 26-920)......................................................................... 13

A. Plaintiffs Now Concede They Cannot Compel NARA to Retrieve Allegedly-Lost Presidential Records ................................................................. 13

B. NARA's Redressability Defense (Which Plaintiffs Do Not Address) Applies Equally to Federal Records .................................................................. 13

C. Plaintiffs Appear to Be Requesting The Same Kind of Records from the FBI in a Separate, Earlier-Filed FOIA Lawsuit .................................................. 14

III. Plaintiffs May Not Sue DOJ to Move Presidential Records to NARA (Counts 5-6, No. 26-920)......................................................................................................... 16

CONCLUSION.......................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Am. Hist. Ass'n v. Trump*,
835 F. Supp. 3d 1 (D.D.C. 2026) ............ 6

*Arizonans for Off. English v. Arizona*,
520 U.S. 43 (1997) ............ 7

*Armstrong v. Bush*,
924 F.2d 282 (D.C. Cir. 1991) ............ 16, 17

*Armstrong v. Exec. Off. of the President,*
1 F.3d 1274 (D.C. Cir. 1993) ............ 8

*Armstrong v. Exec. Off. of the President,*
90 F.3d 553 (D.C. Cir. 1996) ............ 8

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ............ 3

*Everytown for Gun Safety Support Fund v. Bureau of ATF*,
984 F.3d 30 (2d Cir. 2020) ............ 10

*Judicial Watch, Inc. v. NARA*,
845 F. Supp. 2d 288 (D.D.C. 2012) ............ 14, 16

*Judicial Watch, Inc. v. U.S. NARA*,
No. 1:07-cv-1267, 2008 WL 11516011 (D.D.C. May 20, 2008) ............ 4

*Judicial Watch, Inc. v. U.S. NARA*,
No. 1:07-cv-1987, 2008 WL 11516012 (D.D.C. Sept. 30, 2008) ............ 4

*Kissinger v. Reps. Comm. for Freedom of the Press*,
445 U.S. 136 (1980) ............ 16, 17

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ............ 15

*Legal Eagle, LLC v. DOJ*,
No. 1:24-cv-3316, 2026 WL 35261 (D.D.C. Jan. 6, 2026) ............ 3

*Lewis v. Casey*,
518 U.S. 343 (1996) ............ 7

*National Family Planning & Repro. Health Ass'n, Inc. v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006) ............ 16

*Neal v. Frayer*,
2025 WL 621984 (D. Md. Feb. 26, 2025) .................................................................... 14

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021)................................................................................................... 6

*Open America v. Watergate Special Prosecution Force*,
547 F.2d 605 (D.C. Cir. 1976) ............................................................................... 2, 3

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)................................................................................................. 5, 7

*Trump v. Slaughter*,
609 U.S. 422 (2026)................................................................................................... 7

*Wal-Mart Real Est. Bus. Tr. v. Garrison Realty Invs., LLC*,
657 F. Supp. 3d 757 (D. Md. 2023)......................................................................... 14

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001)................................................................................................... 6

**Statutes**

5 U.S.C. § 552.......................................................................................................... *passim*

5 U.S.C. § 706............................................................................................................... 6

44 U.S.C. § 2208...................................................................................................... 4, 8

44 U.S.C. § 3301........................................................................................................ 13

**Rules**

FED. R. CIV. P. 12 ................................................................................................ 7, 12

**Regulations**

36 C.F.R. § 1250.26 ...................................................................................................... 9

36 C.F.R. § 1250.82 ...................................................................................................... 9

## INTRODUCTION

This is the second time the parties have briefed the Government's motion to dismiss. Yet Plaintiffs' second opposition repeats their unsound jurisdictional theory nearly word for word, overlooking the Government's prior arguments in reply. And while the Court ordered re-briefing to address two more issues in one of these cases, Plaintiffs' three-page response is internally inconsistent and potentially duplicative of one of their pre-existing FOIA suits against the FBI.

On jurisdiction, Defendants explained that as a matter of textual analysis, legislative history, and common sense, Congress never intended the Freedom of Information Act's (FOIA) 20-working-day response deadline to apply to the Presidential Records Act (PRA). Indeed, since 2014, the PRA has required the National Archives and Records Administration (NARA) to provide a 60-working-day notice period before disclosing records under the PRA. Once again, Plaintiffs cite only one textual hook for jurisdiction: *assuming* FOIA's deadline applies to the PRA, a court that properly obtains jurisdiction may "retain" jurisdiction and give NARA more time to respond. 5 U.S.C. § 552(a)(6)(C)(i). But as the Government already said, that argument puts the cart before the horse, as FOIA's deadline does *not* apply. Plaintiffs' theory is still policy all the way down.

On the location of presidential records, Plaintiffs' brief guts its own demands for NARA to refer the President to the Department of Justice (DOJ) (Counts 3 and 4) and for DOJ to send NARA presidential records (Counts 5 and 6). Plaintiffs concede, as they must, that this Court may not compel NARA to refer an alleged loss of presidential records. Such a referral is the only recovery mechanism available by statute, and is committed to agency discretion. Plaintiffs offer no authority to the contrary—just policy. So the DOJ counts fail. The NARA counts also fail, as the injury is non-redressable regardless of whether the records Plaintiffs want are presidential or federal. The Court should grant Defendants' motion to dismiss and for judgment on the pleadings.

## I. The Court Lacks Jurisdiction Over Plaintiffs' Records-Denial Claims

FOIA sets the agency a 20-working-day deadline to respond to requests, but the PRA requires the agency to give the President 60 working days to review requests for privilege. That stark distinction confirms Congress never intended to apply FOIA's deadline to the PRA. *See* Mem. in Supp. of Partial Mot. to Dismiss and for J. on the Pleadings at 11-21, ECF 26-1 (MTD). Plaintiffs have thus prematurely filed suit and have largely failed to exhaust administrative remedies. *Id.* Their responses in opposition do not show otherwise.

### A. An *Open America* Stay Cannot Salvage Plaintiffs' PRA Claims

The opposition turns on its invocation of FOIA's "exceptional circumstances" provision, under which courts have stayed litigation to permit orderly processing of earlier-filed FOIA requests. *See* Pls.' Mem. of P. & A. in Opp'n to Defs.' Partial Mot. to Dismiss and for J. on the Pleadings at 15, ECF 32 (Opp.) (citing *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976)). Under that rule, "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may *retain* jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added). Once again, Plaintiffs ask the Court to manufacture its own jurisdiction by issuing an *Open America* stay, blending FOIA and the PRA's distinct timelines into an 80-working-day deadline. *See* Opp. at 16-17. That is still wrong.

#### 1. *Open America* Provides a Different Solution to a Different Problem

Plaintiffs' *Open America* argument ignores FOIA's plain text. By its own terms, the "exceptional circumstances" rule applies only if jurisdiction exists. A court may not "retain" jurisdiction it never had to start. FOIA's deadline never applied to the PRA, so FOIA's constructive-exhaustion rule never triggered, and this Court never had jurisdiction to "retain."

This argument also ignores FOIA's structure. That law provides agencies only one option to extend the 20-working-day deadline (where that deadline applies), and that option is capped at ten working days. *See* 5 U.S.C. § 552(a)(6)(B)(i). Making the FOIA deadline 30 working days instead of 20 would not bridge the gap between FOIA and the PRA. 30 is still fewer than 60. Plaintiffs therefore ask the Court to invent an extension rule that Congress did not create. But as Defendants previously explained, "it is 'particularly inappropriate' to read language into a statute … 'when, as here, Congress has shown that it knows how to adopt the omitted language or provision.'" MTD at 23 (quoting *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 814 (2024)). Congress knew how to write a FOIA extension, and it wrote only one.[1]

Finally, this argument invokes *Open America* to reach the very result it sought to avoid. There, the D.C. Circuit held that when a district court already has jurisdiction and the agency has a large backlog of requests, the court may stay the case so the agency can process its requests (including those filed by the plaintiff) on an orderly, "first-in, first-out basis." Otherwise, a requester could effectively skip the line by filing a lawsuit, rewarding him for suing at the expense of the requesters ahead of him in the agency queue. *See Open America*, 547 F.2d at 614-15. This approach, if condoned, "would ultimately profit no one," since everyone would rationally sue to secure their own places in line, and "no one would be assigned a priority position any different than he would achieve if all applicants were left to the priorities fixed by the agency." *Id.* at 615 (adding that alternatively, the wealthy would skip the line and people who could not afford a lawyer would be left out). The D.C. Circuit's sensible reasoning points to the exact opposite

[1] Plaintiffs alternatively say Defendants' jurisdictional defense is moot since NARA took more than 80 working days to process most of their requests. *See* Opp. at 18-20. But that argument rests on the same flawed premise as the *Open America* argument. Nor would it fix *these* cases. *See Legal Eagle, LLC v. DOJ*, No. 1:24-cv-3316, 2026 WL 35261, at *4, *6 (D.D.C. Jan. 6, 2026) ("[A] FOIA plaintiff may not cure a failure to exhaust … during litigation.").

outcome of Plaintiffs' position. NARA is processing Plaintiffs' requests in the ordinary course. *See* MTD at 8, 20. Plaintiffs' suit would skip the line by grafting a FOIA timeline onto the PRA.[2]

By a similar token, the PRA's 60-day notice period is not actually a valid basis for an *Open America* stay. The FOIA exceptional circumstances provision does not apply to "a delay that results from a predictable agency workload of requests." 5 U.S.C. § 552(a)(6)(C)(ii). In a PRA case, there is no delay more predictable than the statutory 60-day notice period for presidential privilege review, which applies any time the Government proposes producing presidential records.

#### 2. Plaintiffs Identify Only Two *Open America* Stays in PRA Cases in Fifty Years, Which Have Little Resemblance to Today's Case

An *Open America* stay in a PRA case is unusual, to say the least. Plaintiffs say that Defendants' constructive-exhaustion argument is unprecedented and that *Open America* is the usual response, *see* Opp. at 15, but *their* proposal is far from established practice. Plaintiffs and Defendants together have found only two *Open America* stays in PRA cases in the last 50 years, both involving Judicial Watch's attempts to uncover records from then-Senator Hillary Clinton's tenure as First Lady during the 2008 presidential election. *Judicial Watch, Inc. v. U.S. NARA (Judicial Watch I)*, No. 1:07-cv-1267, 2008 WL 11516011 (D.D.C. May 20, 2008) (phone logs); *Judicial Watch, Inc. v. U.S. NARA (Judicial Watch II)*, No. 1:07-cv-1987, 2008 WL 11516012 (D.D.C. Sept. 30, 2008) (records of the Clinton-chaired Task Force on National Health Care Reform). Neither case provides a compelling basis to sustain this Court's jurisdiction.

Most importantly, both cases predate the 60-working-day presidential notice period, which Congress added in 2014. When the first *Judicial Watch* action was filed, the presidential notice

[2] To cloud the waters, Plaintiffs complain that NARA delayed releasing its first tranche of responsive records in this case until "after Legal Eagle has filed this Opposition." Opp. at 16 n.8. But that is not gamesmanship on NARA's part: after Defendants moved to dismiss, the President invoked his statutory 30-working-day extension, which NARA lacks discretion to deny. 44 U.S.C. § 2208(a)(3)(B) ("A former President … *may* extend the [review] period ….") (emphasis added).

period had no strict limits.[3] This, neither case says (or even implies) that a court may use *Open America* to Scotch-tape the PRA's 60-working-day Presidential notice period to FOIA's 20-working-day deadline. That notice period did not even exist in 2008. And when Congress imposed its own statutory 60-working-day notice period, nothing it wrote endorsed a Scotch-tape theory either. To the contrary, the imposition of a new and incompatible review period decisively *confirmed* that FOIA's 20-day deadline does not apply to the PRA. *See* MTD at 5-6, 19-20.

In addition, the *Judicial Watch* courts merely assumed they had subject matter jurisdiction, and such assumptions carry no persuasive value or precedential effect. No party directly presented the jurisdictional issue to the courts. *See* Compl. ¶¶ 4, 8, *Judicial Watch I* (reciting jurisdictional allegations); Def.'s Opp'n. to Pl.'s Appl. for Injunctive Relief at 15-18, *Judicial Watch I*, ECF 5 (not contesting jurisdiction); Order, *Judicial Watch I*, ECF 9 (directing Government to either file a status report or a dispositive motion); Def.'s Status Report & Processing Schedule, *Judicial Watch I*, ECF 10 (choosing the status report); Compl. ¶¶ 1, 5, 8, *Judicial Watch II*, ECF 1 (reciting jurisdictional allegation); Answer, *Judicial Watch II*, ECF 3 (not discussing FOIA's deadline). Neither did the *Judicial Watch* courts analyze their own jurisdiction. So their assumption of jurisdiction has no bearing on this case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) (explaining that "drive-by jurisdictional rulings" have "no precedential effect").

#### 3. Plaintiffs' Argument Is Policy All the Way Down—And It Is Wrong

Lastly, Plaintiffs argue that Defendants *must* be wrong because the constructive-exhaustion rule is "the only part of FOIA that allows timely judicial review" and if Defendants are right, NARA could theoretically run out the six-year FOIA statute of limitations by refusing to process

[3] As Defendants explained in their motion to dismiss, before 2014, Congress left it to the Executive Branch to establish procedural rules for incumbent and former Presidents to invoke executive privilege. *See* MTD at 17-19.

a request. Opp. at 12. But that is not true. If NARA failed to respond to a PRA request within six years, Plaintiffs could file an Administrative Procedure Act (APA) withholding claim—like the one they filed in this very proceeding. *See* MTD at 20; 5 U.S.C. § 706(1); First Am. Compl. ¶¶ 52-58, ECF 54 (No. 26-920) (FAC).[4] In any case, NARA is processing Plaintiffs' requests. *See* MTD at 8, 20; *see generally Am. Hist. Ass'n v. Trump*, 835 F. Supp. 3d 1, 15-16 (D.D.C. 2026) (recognizing that amidst a challenge to the PRA's constitutionality, NARA had agreed to process PRA requests even before the court enjoined various White House offices to comply with the PRA, and declining to enjoin NARA on that basis). It asks only that Plaintiffs wait their turn.

Plaintiffs conclude that Congress could not possibly have meant to exempt the PRA from FOIA's 20-working-day deadline because Congress does not "hide elephants in mouseholes." Opp. at 12 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)). But that conclusion ignores how Congress actually enacted and amended the PRA, and would twist that law into knots. Under Plaintiffs' theory, the PRA effectively forces every PRA request into district court by "layering a 90-day review period on a 20-day deadline." *See* MTD at 11-12. That outcome makes little sense, particularly when applied to the PRA, which "aims to balance the broader goal of disclosure with constitutionally grounded concerns about Executive Branch deliberation, stakeholder comments, and multiple layers of review." *Id.* at 20. And it is also implausible under traditional tools of statutory interpretation: if Congress actually wanted every PRA request to go to district court, "there were more straightforward ways to say so." MTD at 12 (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 167 (2021)).

[4] Plaintiffs respond that their APA claims are *not* withholding claims, *see* Opp. at 16 n.9, but they seem to be conflating the withholding of specific documents under FOIA exemptions with withholding of agency action (here, a referral to DOJ) under the APA. *Compare* 5 U.S.C. § 552(b) (identifying categories of information not subject to FOIA requests) *with id.* § 706(1) ("The reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed.").

### B. Plaintiffs' Adverse-Possession Jurisdictional Theory Lacks Merit

Scattered throughout Plaintiffs' brief is a series of related "but in this other case" arguments, which boil down to the belief that because NARA has not challenged subject matter jurisdiction in other situations, this challenge must be wrong. At best, this position sounds in waiver and acquiescence—doctrines with no relevance to subject matter jurisdiction.

#### 1. There Is No Statute of Limitations, Waiver, or Acquiescence Defense to Jurisdictional Arguments

Plaintiffs collect several PRA cases where NARA did not challenge jurisdiction and add that NARA sent them a boilerplate letter mentioning FOIA's 20-day deadline in connection with their PRA requests. *See* Opp. at 8-11. As a waiver argument, that is meritless. "No branch may rely on adverse possession to claim power that the Constitution vests elsewhere." *Trump v. Slaughter*, 609 U.S. 422, 452 (2026). Nowhere is this more true than subject matter jurisdiction. Plainly, as a practical matter, a defendant's failure to contest jurisdiction makes it more likely a court will assume jurisdiction exists. Even so, it is legally impossible for a litigant to waive subject matter jurisdiction. *See* FED. R. CIV. P. 12(h)(3). Courts are obligated to examine their own jurisdiction *sua sponte*, "even though the parties are prepared to concede it." *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 73 (1997) (citation omitted). Litigants may not waive jurisdiction in the short run. *See id.* Nor may they do so in the long run. Rather, jurisdictional rulings based on litigants' implicit or explicit concessions have "no precedential effect." *Steel Company*, 523 U.S. at 91; *accord Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) ("[S]tanding was neither challenged nor discussed in [an earlier] case, and we have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect.").

Nor is there an executive-acquiescence doctrine for FOIA cases. At one time, for example, the National Security Council "routinely conceded its status as an 'agency' subject to the FOIA in

litigation" and governed by the Federal Records Act (FRA). *Armstrong v. Exec. Off. of the President (Armstrong II)*, 1 F.3d 1274, 1296 (D.C. Cir. 1993) (remanding for further determinations on this question). That was, in part, because the Department of Justice Office of Legal Counsel (OLC) said so in 1978. *See Armstrong v. Exec. Off. of the President (Armstrong III)*, 90 F.3d 553, 557 (D.C. Cir. 1996). In 1993, during the Clinton Administration, OLC reversed its position and concluded that the NSC "does not have to comply with the FRA." *Id.* The D.C. Circuit agreed with OLC's new position, writing that the NSC's past decision to "voluntarily subject[] certain of its records to the FOIA and the FRA[,] does not reflect any intention to concede, and should not be taken to establish as a matter of law, that the NSC is subject to those statutes." *Id.* at 566. At no point did the D.C. Circuit suggest the Government irreversibly foreclosed its position on the NSC by acquiescing to FOIA requests—even though OLC's stance on the NSC was older in 1993 than the PRA's 60-day notice period is today.

**2. The Fact that NARA Agrees Constructive Exhaustion Applies to Administrative Appeals Cuts In Favor of NARA, Not Against It**

Plaintiffs complain that NARA's jurisdictional challenge does not cover Count 2 of Case No. 26-1214, which asserts constructive exhaustion over an administrative appeal when NARA found *no* responsive records. Opp. at 17. That argument refuses to take yes for an answer.

FOIA directs agencies to process administrative appeals within 20 working days. 5 U.S.C. § 552(a)(6)(A)(ii). If the agency fails to respond within that timeframe, FOIA constructively exhausts administrative remedies. *Id.* § 552(a)(6)(C)(i). The PRA imposes a 60-working-day notice period only if NARA plans to produce responsive records. *See* 44 U.S.C. § 2208(a)(1) (privilege review procedures trigger only "[w]hen the Archivist determines under this chapter to make available to the public any Presidential record that has not previously been made available to the public"). If nothing is being produced, there is no point in making a requester wait.

Here, NARA was able to respond to one of Plaintiffs' FOIA requests by telling Plaintiffs there were no records responsive to Plaintiffs' request. *See* Compl. ¶ 40, ECF 1 (No. 26-1214).

NARA did not challenge Count 2 because when it comes to administrative appeals, there is no corresponding analogue of the 60-working-day notice period when responding to requests. The process under the PRA played out the way it would for any administrative appeal. Plaintiffs disagreed with NARA's determination that there were no responsive records. *Id.* ¶ 41. Plaintiffs appealed. *Id.* ¶ 43. NARA did not respond to that appeal within 20 working days, so Plaintiffs sued. *Id.* ¶ 45. Had NARA produced records and given the President 60 days to review them, this appeal process would have unfolded the same way—just at a later date.

### 3. Plaintiffs Improperly Analogize to Requests that NARA, by *Regulation*, Does Not Resolve Within 20 Days

Plaintiffs complain that NARA has not raised similar jurisdictional challenges in situations where it, as a matter of internal housekeeping, does not resolve requests within 20 days. For example, NARA administratively classifies some cases as "complex," meaning that NARA internally estimates it cannot resolve them within 20 days. Opp. at 11-12 (citing 36 C.F.R. § 1250.26(g)). And since FOIA Exemption 4 allows NARA to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential," 5 U.S.C. § 552(b)(4), NARA gives (by regulation) the source of the information a 20-day notice period to object to disclosure. Opp. at 17-18 (citing 36 C.F.R. § 1250.82(e)). Plaintiffs conclude that under NARA's view, NARA could also assert constructive exhaustion in those cases, and question why NARA has not done so.

These arguments are wide of the mark. NARA does not raise constructive exhaustion in those cases because an agency cannot supersede FOIA's text by regulation.[5] But Congress can supersede FOIA's text by passing a new law—like the 2014 PRA amendments. *See* MTD at 12-13 (discussing the last-in-time rule and Congress' decision to bypass the OPEN FOIA Act, as recounted in *Everytown for Gun Safety Support Fund v. Bureau of ATF*, 984 F.3d 30, 34 (2d Cir. 2020)). Plaintiffs speculate that the Exemption 4 argument might be relevant because Congress might have also delegated the procedure for "involving [trade secret] submitters" to the Executive Branch. *See* Opp. at 18. But they do not back up this speculation with evidence. By contrast, NARA gathered drafting and legislative history showing that in enacting the PRA, Congress intentionally left privilege procedure to the Executive Branch. *See* MTD at 14-17, 19-20. And now, Congress does not. NARA *regulations* are not a convincing analogy to the Presidential Records *Act*.

**4. NARA Did Not Permanently Acquiesce to Federal Court Jurisdiction by Continuing to Process Longstanding PRA Requests**

Plaintiffs respond that NARA does not genuinely believe in its statutory interpretation argument since it has not moved to dismiss its pending PRA cases. Opp. at 3-5. That argument is not responsive. If Plaintiffs are upset that they are the first requesters to have to respond to this argument, that is because they rushed to the courthouse. Indeed, they filed their first lawsuit

---

[5] Plaintiffs add that NARA still mentions a now-superseded executive order in its regulations after Congress enacted the current statutory privilege review framework. Opp. at 12. The same response applies: a regulation cannot supplant the statutory text. True, NARA did not remove the reference to the executive order when amending that general area of the CFR in 2017. But that is, at worst, a clerical oversight that can be cleaned up at a later date.

nine days after submitting a request for expedited processing, which would be unlawful under even their theory of the case. *See* MTD at 8 n.2.[6]

More importantly, this argument ignores practical reality, as applying this argument to older cases would achieve little of substance. Of the five cases Plaintiffs cite in their introduction where the Government submitted filings not challenging jurisdiction after NARA moved for leave to file this Motion, three were filed in 2024 or earlier, and the fourth concerns two PRA requests from 2020 that NARA had already been processing for years before the lawsuit. *See* Compl. ¶ 6, *Gillon v. NARA*, No. 1:25-cv-2079 (D.D.C. June 30, 2025), ECF 1 (noting that NARA's compliance began in October 2020, over four years before litigation).

Seeking dismissal of those pending PRA cases would serve little purpose. By April 29, 2026, when NARA announced its intent to move to dismiss, NARA had already performed the relevant searches for records in the other cases and had already assigned resources to processing the records on a cadence authorized by the district court. Many were winding up. *See* Joint Status Report at 2, *Cato Inst. v. NARA*, No. 1:22-cv-1746 (D.D.C. July 7, 2026), ECF 32 (noting that all non-classified records had already been processed, and federal agencies had already completed declassification reviews for the remaining records); Second Joint Status Report, *Gillon v. NARA*, No. 1:25-cv-2079 (D.D.C. June 8, 2026), ECF 18 (NARA was already in the process of releasing Al Gore vice presidential records); Joint Status Report, *National Sec. Archive v. NARA*, No. 1:24-cv-3300 (D.D.C. June 29, 2026), ECF 22 (NARA had already processed 383 of 435 pages); Status Report, *Southeastern Legal Found., Inc. v. NARA*, No. 1:23-cv-3819 (N.D. Ga. May 19, 2026),

[6] Of the 11 post-2020 NARA lawsuits Plaintiffs cite, Opp. at 6-7, only 3 were filed within 9 months of the request. *See Jud. Watch v. NARA*, No. 22-3310 (D.D.C.) (5 months); *Legal Eagle v. NSC*, No. 20-1732 (D.D.C.) (4 months); *Am. First Legal Found. v. NARA*, No. 22-2713 (D.D.C.) (1 month). Two are basically done, and in the third, NARA finished document review several months before filing this Motion. *See* Joint Status Report ¶¶ 8-9, *Jud. Watch*, ECF 23 (Jan. 16, 2026).

ECF 37 (NARA has been making rolling productions since February 2024). But moving to dismiss in *this* case allows both the parties and the Court to efficiently answer this threshold jurisdictional question at the outset of the case.

The Court should also disregard the only new argument in Plaintiffs' opposition brief—that Defendants' motion to dismiss is insincere because NARA (represented by a different DOJ component) chose to answer a different PRA complaint about President Trump's first term. Opp. at 9-10 (citing Answer, *McDaniel v. NARA*, No. 1:26-cv-2619 (D.D.C. Oct. 2, 2026), ECF 6). To be sure, NARA could have raised constructive exhaustion in that case, and it still can. *See* FED. R. CIV. P. 12(h)(3). But shortly before Plaintiffs filed their opposition brief here, NARA articulated a practical basis to answer *McDaniel*: it is already finalizing records responsive to five of the six subparts of McDaniel's PRA request and plans to include them in its next batch of privilege notifications, scheduled for December 2026. *See* Joint Status Report ¶¶ 2-3, *McDaniel v. NARA*, ECF 7 (D.D.C. Oct. 19, 2026). NARA reasonably determined there was little to be gained from filing a dispositive motion under those circumstances.

More broadly, NARA is making substantial progress processing public records requests for materials from President Trump's first term. There is no basis for any court to disturb the usual FOIA processing principles. But there is a substantial basis to oppose Plaintiffs' theory of the case, which would perversely incentivize overzealous FOIA litigants to sue NARA before it can possibly satisfy a request for presidential records.

## II. Plaintiffs May Not Sue NARA For the Loss of Either Presidential or Federal Records (Counts 3-4, No. 26-920)

### A. Plaintiffs Now Concede They Cannot Compel NARA to Retrieve Allegedly-Lost Presidential Records

Plaintiffs' complaint repeatedly alleges that the FBI handed over "presidential records seized from the Mar-a-Lago Club," FAC ¶ 16; *see also id.* ¶¶ 18, 25-26, 28-29, 30-31. Even so, Plaintiffs now admit they "cannot compel NARA to recover Presidential records." Opp. at 20-21. That is correct. The PRA imposes no duty to seize Presidential records, and the question of whether to refer the loss of presidential records to DOJ for "action" is committed to NARA's sole and unreviewable discretion. *See* MTD at 22-26. Nor are Plaintiffs' injuries redressable. *Id.* at 26-27.

### B. NARA's Redressability Defense (Which Plaintiffs Do Not Address) Applies Equally to Federal Records

To save these claims, Plaintiffs retreat to a different law, saying the FBI created *federal* records by photocopying presidential records and then improperly handed over both the presidential records it seized and the photocopies of those records. Opp. at 20-21. Under the Federal Records Act (FRA), recorded information is a federal record if "made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency … as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them" and not a "duplicate cop[y] preserved only for convenience." 44 U.S.C. § 3301(a)(1). Plaintiffs conclude the FRA redress statutes allow an APA suit to compel a referral for lost federal (but not presidential) records.

Whatever may be said of this threadbare assertion in briefing, even assuming photocopies of presidential records are independently federal records, Plaintiffs' alleged injury is not redressable by an order of this Court. As Defendants explained in their motion to dismiss,

the complaint is cagey about what exactly Plaintiffs want DOJ to do after a NARA referral—a silence implying a lack of standing. MTD at 26. After all, in the Bill Clinton audiotapes case, the plaintiffs failed to "identify anything specific the Court could or should order the [Government] to do," which "underscore[d] the lack of redressability fatal to that case." *Id.* (quoting *Judicial Watch, Inc. v. NARA*, 845 F. Supp. 2d 288, 303 (D.D.C. 2012)). Here, Defendants' motion put Plaintiffs on notice that they should ask the Government to do something specific. But the opposition remains silent on that score. In fact, it handwaves Defendants' entire redressability argument on the basis that the motion focused fire on presidential and not federal records. *See* Opp. at 21 (saying only that NARA must "seek the Attorney General's assistance in recovering" the photocopies).

That is illogical and non-responsive. Whether the records are presidential or federal, the same response applies: "[b]ecause the [records] are not physically in the government's possession … it would be required to seize them directly from [the President] in order to assume custody and control over them," an "'extraordinary request … contrary to traditional principles of administrative law." MTD at 26-27 (quoting *Judicial Watch v. NARA*, 845 F. Supp. 2d at 302-03). "[A] party's failure to respond to an argument ordinarily constitutes a waiver of that issue." *Wal-Mart Real Est. Bus. Tr. v. Garrison Realty Invs., LLC*, 657 F. Supp. 3d 757, 767 (D. Md. 2023). The Court should dismiss Counts 3 and 4 since Plaintiffs waived a dispositive issue by persistently failing to address the elephant in the room. *See Neal v. Frayer*, 2025 WL 621984, at *3 (D. Md. Feb. 26, 2025) ("Plaintiffs do not address [this] argument in their opposition to [the] motion to dismiss," so "they may be deemed to have abandoned their claim and thus waived the issue.").

### C. Plaintiffs Appear to Be Requesting The Same Kind of Records from the FBI in a Separate, Earlier-Filed FOIA Lawsuit

Lastly, if the FBI made federal-record photocopies of presidential records, the most obvious first step for Plaintiffs would be to submit a FOIA request to the FBI for those photocopies.

That is not to say the photocopies would necessarily be available under FOIA; for example, they might be subject to a FOIA exemption. But it makes little sense to compel a referral to DOJ in preparation for a future records request under the PRA—a bank-shot legal theory at best—when FOIA litigation against the FBI for records from President Trump's first term has been underway for nearly two years.

On November 8, 2024—several months *before* the alleged transfer of presidential records (and alleged photocopies) to Mar-a-Lago—Plaintiff Legal Eagle sent the FBI a FOIA request for "all information about former President Donald Trump in the Central Records System collected or created as part of the investigations into him for unlawfully retaining national security information." Third Am. Compl. ¶ 67, *Legal Eagle, LLC v. DOJ*, No. 1:24-cv-3316 (D.D.C. Apr. 8, 2026), ECF 29-1. That December, Legal Eagle sued to enforce that request. *See* First Am. Compl. ¶ 40, *Legal Eagle v. DOJ* (D.D.C. Dec. 10, 2024), ECF 6. Legal Eagle claims its request covers photocopies of the presidential records seized from Mar-a-Lago in 2022, that those photocopies are FBI agency records, and that the photocopies are one of their top priorities in the D.D.C. lawsuit. *See generally* Joint Status Report at 2, *Legal Eagle v. DOJ* (D.D.C. Oct. 21, 2026), ECF 34. The parties are still discussing the scope of the request.

Thus, even if the Court finds standing and a plausible claim as to Counts 3 and 4 (and it should not), the Court should at minimum stay litigation on those counts while the older and much-advanced *Legal Eagle v. DOJ* case plays out. Until then, there is no basis to separately demand that NARA ask DOJ to sue the sitting President of the United States on a photocopy theory. The usual basis to oppose a stay—that a court should rarely force a party in one case to "stand aside while a litigant in another settles the rule of law that will define the rights of both," *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)—does not apply, since Legal Eagle is the plaintiff in both

cases and the same lawyer (who is also the Executive Director of Plaintiff National Security Counselors) represents all plaintiffs. And a stay will also avoid tricky questions of when a failure to file or to enforce a FOIA request becomes the sort of self-inflicted harm that independently defeats standing. *See* MTD at 29 (citing *National Family Planning & Repro. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006)).

## III. Plaintiffs May Not Sue DOJ to Move Presidential Records to NARA (Counts 5-6, No. 26-920)

In Counts 5 and 6, Plaintiffs ask DOJ to transfer any remaining presidential records to NARA. But when discussing Counts 3 and 4, Plaintiffs concede they may not force NARA to refer the loss of presidential records for DOJ "action." *See* Opp. at 20-21. Rather, the delicate question of whether and when to request a referral is committed to NARA's sole discretion. That concession is fatal to Counts 5 and 6.[7]

Congress intended the FRA redress statutes to be the exclusive method to claw back lost *federal* records. *See* MTD at 30 (citing *Armstrong v. Bush (Armstrong I)*, 924 F.2d 282, 294 (D.C. Cir. 1991)). The FRA lacks "an implied right of action for private litigants to prevent the removal of records," and "'establishes only one remedy for the improper removal of a 'record' from the agency'"—the referral mechanism. *Armstrong I*, 924 F.2d at 294 (quoting *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 148 (1980)). Since the PRA contains no referral mechanism (or, for that matter, private right of action) and instead borrows the FRA redress statutes, *see* MTD at 23-24, those statutes must also be the exclusive method to challenge the location of a presidential record, *see id.* at 25 (citing *Judicial Watch v. NARA*, 845 F. Supp. 2d at

[7] Plaintiffs' response to Defendants' other argument—that APA relief and mandamus are unavailable because Plaintiffs have not sent DOJ a records request for the presidential records in is custody—is wholly conclusory, and Plaintiffs cite no authority in support. Plaintiffs have thus waived the point. *Compare* MTD at 28-29 *with* Opp. at 21.

302). And since Plaintiffs concede they may not compel NARA to refer a presidential records case, Counts 5 and 6 fail.

Plaintiffs respond that the Court should nonetheless authorize a private APA claim—which, as construed by *Kissinger* and its progeny, is really an implied private right of action—since it is not practical for one agency to sue another. But that is precisely the kind of policy rationale Congress rejected in the FRA and the Supreme Court rejected in *Kissinger*. In fact, the *Kissinger* plaintiffs also asked the judiciary to shuffle records from one government component to another—to no avail. *See Kissinger*, 445 U.S. at 145, 148-50. Nothing in the PRA compels a contrary result here. Interpreting the PRA in light of *Kissinger*, the D.C. Circuit held in *Armstrong I* that the PRA generally precluded judicial review regarding presidential records. *See* 924 F.2d at 291. An FRA plaintiff might bring an APA suit to compel a referral for lost *federal* records. *See id.* at 295. But here, Plaintiffs concede that path does not apply to presidential records.

In any case, to dispose of *these* claims, this Court does not need to explore every hypothetical complication or potential lawsuit when one agency's authority overlaps with another. DOJ holds the records at issue, and it is DOJ that NARA would be asking to "initiate action" under the redress statutes. Thus, DOJ "action" short of litigation can resolve this intra-agency dispute.

**CONCLUSION**

For the foregoing reasons, in Case No. 26-371, the Court should dismiss Counts 2, 4, 6, and 8-12. In Case No. 26-847, the Court should dismiss the case. In Case No. 26-920, the Court should dismiss the case. In Case No. 26-1214, the Court should dismiss Counts 1 and 3-6.

Dated: November 12, 2026

Respectfully submitted,

JONATHAN GUYNN
Acting Assistant Attorney General, Civil Division

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ Winston Shi
JOHN BAILEY (OH Bar No. 104260)
Counsel to the Assistant Attorney General
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 880-0387
Email: winston.g.shi@usdoj.gov

*Counsel for Defendants*